STATE of Wisconsin, Plaintiff-Appellant,

v.

Dimitri HENLEY, Defendant-Respondent.†

Supreme Court

*No. 2008AP697–CR. Oral argument October 20, 2009.
—Decided July 21, 2010.*

2010 WI 97

(Also reported in 787 N.W.2d 350.)

† Supreme Court Motion for Reconsideration Pending.

547

For the plaintiff-appellant the cause was argued by *Katherine D. Lloyd,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-respondent there were briefs by *Keith A. Findley, John A. Pray, Byron Lichstein,* and the *Frank J. Remington Center, University of Wisconsin Law School,* Madison, and oral argument by *Keith A. Findley.*

An amicus curiae brief was filed by *Colleen D. Ball,* first assistant state public defender, *Nicholas L. Chiar-*

*kas,* state public defender, and *William J. Tyroler,* assistant state public defender, Milwaukee, on behalf of the Office of the State Public Defender.

¶ 1. MICHAEL J. GABLEMAN, J. This case comes before us on certification following the circuit court's order granting a new trial to Dimitri Henley eight years after his conviction of five counts of second degree sexual assault. The court of appeals certified five questions[1] to us regarding the authority of Wisconsin courts to order a new trial in the interest of justice.

¶ 2. The facts of this case put the issues plainly into focus. Following his conviction, Henley utilized the normal procedural mechanisms to seek a new trial on multiple grounds, including on the ground that the interest of justice required giving him a new trial because testimony that he viewed as crucial had not been presented. He first filed a postconviction motion in the circuit court under Wis. Stat. § 974.02 (2007–08),[2] which was denied. He appealed to the court of appeals under § 974.02 and lost there too. He then filed a petition for review in this court, which we denied. After that, Henley filed a petition for a writ of habeas corpus in federal court; his petition was denied. A year after that petition was denied, he filed a motion in federal court seeking relief from that denial, which was also denied. Henley did not appeal his case to the Seventh Circuit.

¶ 3. Years later, after charges against his two co-defendants had been dismissed, Henley moved for a new trial under Wis. Stat. § 805.15(1) in the interest of justice on the same grounds—the absence of the pur-

---

[1] For a listing of the questions posed to us by the court of appeals and our approach in answering them, see *infra* note 16.

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

portedly crucial testimony—that had already been rejected by five different courts. The same trial judge who presided over Henley's conviction and sentencing, and who rejected his original postconviction motion on the same grounds, this time granted him a new trial. The State appealed, and the court of appeals certified the case to us. Several important procedural questions await our review.

¶ 4. The first two issues concern whether and when certain provisions governing civil procedure in Wisconsin may be utilized by a convicted criminal defendant seeking a new trial. The second two issues relate to the inherent power of Wisconsin courts to order a new trial in the interest of justice. The issues we address are as follows:

1. May a circuit court award a new trial to a convicted criminal defendant in the interest of justice under Wis. Stat. § 805.15(1)? Relatedly, is such a challenge subject to the time limitations contained in Wis. Stat. § 805.16(1), or may a convicted criminal defendant file a motion for a new trial under § 805.15(1) at any time?

2. May a circuit court award a new trial to a convicted criminal defendant in the interest of justice under Wis. Stat. § 806.07(1)(g) or (h)?

3. Do Wisconsin circuit courts possess inherent authority to order a new trial in the interest of justice at any time for a convicted criminal defendant?

4. Should this court exercise its inherent or statutory authority in this case to order a new trial in the interest of justice?

¶ 5. We hold that neither Wis. Stat. § 805.15(1) nor § 806.07(1)(g) or (h) are available procedural mechanisms for a convicted criminal defendant to chal-

lenge his or her conviction or sentence. We further hold that Wisconsin circuit courts do not have the inherent authority to order a new trial in the interest of justice when a case is not before the court under a proper procedural mechanism. Therefore, the circuit court did not have the authority to order a new trial in this case. Finally, we decline to exercise our authority to order a new trial for Henley because his case was fully tried and justice has not miscarried. Accordingly, the decision of the circuit court is reversed with instructions to deny Henley's motion for a new trial.

## I. FACTS

¶ 6. These facts are taken from Henley's second trial.[3] Testimony that would have contradicted some of these facts (but was not presented in Henley's trial) is explained later as needed.

¶ 7. S.E.S., an 18–year-old female freshman, had recently moved into the residence dorms of the University of Wisconsin-Whitewater. On the night of September 5, 1998, before classes had started, S.E.S. and her roommate, Heidi Sheets, returned to their dorm building from a party where each had drunk a few beers. They first stopped in the dorm room of Shawn Demain, where they met Dimitri Henley, Jarrett Adams, and Rovaughn Hill, all of whom had traveled from Chicago to sell cologne.

¶ 8. Around 1:00 a.m. on September 6, S.E.S. left to go to her room. S.E.S. testified that she walked up to her room alone, but that after she entered her room, she turned and was surprised by Henley, Adams, and

---

[3] Henley's first trial ended in a mistrial. Further details of the complicated procedural history of this case are related in ¶¶ 11–27, *infra.*

Hill. Sheets testified that she and S.E.S. invited all three men up to her room, and that they left together (although the plan was for Sheets to visit a friend and join them 20–30 minutes later).

¶ 9. Once in the room, one of the men put on a CD, and Adams began to dance with S.E.S. and fondle her breasts and groin, even though she told him to stop. Henley danced with and fondled her as well. Hill then pulled S.E.S. over to Sheets' bed and pulled his pants down. At this point, Sheets entered the room and saw Hill with his pants down. Sheets assumed that S.E.S. was performing or was going to perform oral sex. Hill then said "Do you want some of this, baby?" and Sheets ran out. S.E.S. followed, unrestrained by the men, and tried to talk to Sheets. But Sheets refused to speak with her, at one point calling her a "slut."

¶ 10. S.E.S. went back down the hallway to leave the floor via a staircase, but Hill blocked her path and "directed" her back to her room, although he did not force her to do so. Adams then told her to lay on the floor, which she did. Adams tried to take her pants and underwear off, which she resisted at first, and then permitted. Over the next several minutes, S.E.S. engaged in three acts of vaginal intercourse, though she did not know who those acts were with.[4] While one of the other men was having sex with S.E.S., one of the men rubbed his penis on her face, trying to get her to perform oral sex, which she did not do. This happened a second time when another of the sexual acts was taking place. The three men left immediately after the

---

[4] At some time before the vaginal intercourse, S.E.S. received a phone call in her room from a friend and talked with her for about five minutes without mentioning that anything was wrong. It is unclear precisely when this happened relative to the other events.

assault, and S.E.S. called her new boyfriend, who consoled her and eventually convinced her to go to the hospital and report the sexual assaults.

## II. PROCEDURAL HISTORY

¶ 11. The procedural history of this case is unusually complex, and vital to understanding the issues in this case, so we relate it in detail.

¶ 12. On December 1, 1998, the State charged Henley, Hill, and Adams each with five counts of first degree sexual assault, one count of second degree sexual assault, and one count of false imprisonment, all as party to a crime. After a three-day jury trial beginning on August 24, 1999, the State moved to amend the charges, which the court granted.[5] The defendants responded by moving for a mistrial, which the court also granted.

¶ 13. After this, the State proceeded to try the defendants again. Hill, but not the other two defendants, moved for dismissal on double jeopardy grounds. The court denied the motion, and Hill appealed. The court of appeals ordered Hill's case stayed pending appeal, and the circuit court, on the State's motion, severed Hill's case so that trial could proceed against Henley and Adams.

¶ 14. The case against Henley and Adams went to trial on February 8, 2000, wherein the facts noted above were adduced. The jury found both men guilty of five counts each of second degree sexual assault. Henley was

[5] The State moved to reduce all five first degree sexual assault counts to second degree, the second degree count to fourth degree, and to remove "aided and abetted by" language from each of the sexual assault counts.

sentenced to five concurrent sentences of 20 years each (in effect, a 20–year sentence).[6]

¶ 15. With the aid of new postconviction counsel, Henley moved for postconviction relief under Wis. Stat. § 974.02.[7] Among the grounds Henley alleged for dismissal was that his trial counsel was constitutionally deficient.

¶ 16. During this time, Hill's appeal was unsuccessful and he was retried on February 12, 2001. The trial resulted in a hung jury with 11 jurors voting for acquittal and one holding out for conviction. During that trial, Hill testified on his own behalf. He also called Shawn Demain, the resident of the dorm room where S.E.S. first met the defendants, as a witness. Demain testified that of the three African-American men that visited his dorm room that night, two of them left with S.E.S. and Sheets, while the third remained and played video games for 20–30 minutes before departing.[8] Demain further testified that at some point later that evening, he saw S.E.S. and the defendants together outside in the smoking area.

---

[6] Adams was sentenced to three concurrent sentences of 20 years each and two concurrent sentences of eight years each to be served consecutive to the three 20–year sentences. The court explained that the difference in sentencing was due to Adams' anger and lack of remorse.

[7] Under Wis. Stat. § 974.02 and § (Rule) 809.30(2)(b), defendants may file postconviction motions for relief up to 20 days after sentencing.

[8] This testimony is in accordance with Sheets' testimony that the men were invited by her and S.E.S. to their room, and conflicts with S.E.S.'s version of events. However, the testimony conflicts with Sheets' and S.E.S.'s testimony that all three of the men left Demain's room at the same time.

¶ 17. After learning of Hill's partial success, Henley amended his § 974.02 postconviction motion to allege that his counsel was ineffective for failing to call Demain.

¶ 18. The State attempted to try Hill a third time on May 7, 2001, but on the second day of trial the State moved to dismiss the case with prejudice based on newly-discovered evidence, including notes written by a police investigator regarding her conversation with Hill.[9] The charges against Hill were then dropped.

¶ 19. After being provided with this previously undisclosed evidence, Henley amended his postconviction motion a second time to include a claim that a new trial ought to be granted in the interest of justice on the grounds that the real controversy of S.E.S.'s credibility had not been tried. He rested in part on the content of Demain's testimony and the fact that his trial counsel had not called Demain to testify. On October 2, 2001, the circuit court denied Henley's postconviction motion. It held in relevant part that Henley's counsel was not ineffective, but rather chose a reasonable trial strategy in not "bullying" a sympathetic witness with minor inconsistencies and in presenting a witness-less defense. It further held that a new trial in the interest of justice was not warranted because there was not a substantial likelihood of acquittal.

¶ 20. Adams (who had likewise been unsuccessful in postconviction motions) and Henley appealed separately and the court of appeals affirmed each case in

---

[9] The investigator's notes indicate that Hill told her that while S.E.S., Sheets, Henley, and Hill went upstairs together, Adams remained downstairs, joining them later. This corroborates Demain's testimony that one of the defendants remained downstairs playing video games. Hill also told the investigator that S.E.S. and the three defendants had rolled marijuana joints in S.E.S.'s room and had gone downstairs to smoke them before going back upstairs to S.E.S.'s room.

unpublished decisions.[10] Henley and Adams each petitioned this court for review. While review was pending, Henley filed a Wis. Stat. § 974.06[11] motion in the circuit court. The circuit court granted no relief because it had no jurisdiction pending the outcome of the petition for review filed in this court. We denied Henley's petition for review on January 14, 2003, and Adams' petition for review on January 21, 2003.

¶ 21. On May 12, 2003, Henley filed a pro se petition for a writ of habeas corpus in the United States District Court for the Western District of Wisconsin. He based his petition on multiple grounds, including ineffective assistance of counsel for failing to call Demain and that he was entitled to a new trial in the interest of justice—the same claims asserted in his postconviction motion and appeal (and the same claims here). The district court dismissed the petition on June 17, 2003. A year later, Henley filed another motion with the district court seeking relief from that denial; the district court denied the motion. Henley did not appeal to the Seventh Circuit Court of Appeals.

¶ 22. In April 2004, Adams filed a petition for a writ of habeas corpus[12] in the United States District Court for the Eastern District of Wisconsin with the assistance of the Wisconsin Innocence Project.[13] The

[10] *State v. Henley,* No. 2008AP697, unpublished slip op. (Wis. Ct. App. Oct. 10, 2002); *State v. Adams,* No. 2002AP39, unpublished slip op. (Wis. Ct. App. Nov. 7, 2002).

[11] A detailed discussion of § 974.06 is contained in ¶¶ 50–54, *infra.*

[12] The record is unclear as to why Adams' habeas corpus petition was filed so much later than Henley's.

[13] Henley, who filed his habeas corpus petition a year earlier than Adams, had requested assistance from the Wisconsin Innocence Project, but did not receive assistance.

557

district court dismissed his petition on January 11, 2005. Unlike Henley, Adams appealed his dismissal to the Seventh Circuit Court of Appeals.

¶ 23. On June 30, 2006, the Seventh Circuit ruled in Adams' favor. *Adams v Bertrand,* 453 F.3d 428 (7th Cir. 2006). It held that Adams' counsel was constitutionally deficient for failing to investigate and call Demain as a witness. *Id.* at 437. The court explained that Demain could have resolved a discrepancy between S.E.S. and Sheets regarding whether Sheets and S.E.S. invited the defendants to their room. *Id.* The court also found great relevance in Demain's testimony in Hill's trial that he saw S.E.S. and the three men in a smoking area outside the dorm room later that night. *Id.* These things, the court explained, went right to the heart of the issue of consent. *Id.* The court held that counsel could not have made an informed choice about trial strategy without first investigating Demain. *Id.*

¶ 24. Turning to the prejudice prong of the ineffective assistance analysis, the court held that had Demain testified, there was "a reasonable probability that the outcome of Adams's trial would be different." *Id.* at 438. Specifically, the court believed that Demain's testimony would have critically undermined S.E.S.'s version of events and impugned her credibility. *Id.* The court also took notice of the hung jury in and eventual dismissal of Hill's case, in which Demain had testified. *Id.*

¶ 25. Following the Seventh Circuit's decision, the State dismissed all charges against Adams.

¶ 26. Henley learned of Adams' success in federal court, and on November 5, 2007, he filed a motion for a new trial in the interest of justice under Wis. Stat. § 805.15(1)[14] based on the same claims that had already

---

[14] A detailed discussion of § 805.15(1) is contained in Part III.A., *infra.*

been rejected.[15] On February 7, 2008, the circuit court —still presided over by the same judge who oversaw his trial and denied his earlier postconviction motions— granted Henley a new trial, finding that the Seventh Circuit's decision in the Adams case showed that "the issue of consent, the real controversy, was not fully tried." It also held that a motion for a new trial in the interest of justice under § 805.15(1) is not restricted by the 20-day time limitation set forth in Wis. Stat. § 805.16(1).

¶ 27. The State appealed the decision, and the court of appeals certified the case to this court.[16] We accepted the certification.

---

[15] At this point, Henley was represented by the Wisconsin Innocence Project.

[16] The five questions certified by the court of appeals were:

1) whether the circuit court is permitted to grant a new trial in the interest of justice under Wis. Stat. § 805.15(1) without time limit;

2) if it is not, whether the circuit court has inherent authority to grant this relief;

3) if it does not, whether [the court of appeals] may use its power of discretionary reversal under Wis. Stat. § 752.35 to reach back to the original judgment of conviction and grant the same relief;

4) if it does not, whether [the court of appeals] has inherent authority to grant such relief; and

5) if it does not, whether the supreme court should exercise its inherent authority to grant relief in this case.

Because we conclude that the district court does not have the power to order a new trial under these facts, we need not address the power of the court of appeals; its jurisdiction is appellate and is premised on a valid suit in the circuit court. Thus, we have chosen not to address the third and fourth questions certified to us. We do, however, address one additional issue raised by Henley for the first time before this court regarding ordering a new trial for Henley on the basis of Wis. Stat. § 806.07(1)(g) or (h).

559

## III. STANDARD OF REVIEW

¶ 28. Under Wis. Const. art. VII, § 3(3), by accepting the certified appeal, this court acquires jurisdiction of the entire appeal, not merely the questions certified. *Am. Family Mut. Ins. Co. v. Golke,* 2009 WI 81, ¶ 18, 319 Wis. 2d 397, 768 N.W.2d 729.

¶ 29. This case requires the court to decide the judicial authority of the circuit court and to interpret various statutes relating to judicial authority. The issue of judicial authority is a question of law that this court reviews de novo. *State v. McClaren,* 2009 WI 69, ¶ 14, 318 Wis. 2d 739, 767 N.W.2d 550. Likewise, the interpretation of a statute is a question of law that this court reviews de novo, but benefiting from the analysis of the prior courts. *Star Direct, Inc. v. Dal Pra,* 2009 WI 76, ¶ 18, 319 Wis. 2d 274, 767 N.W.2d 898.

## IV. DISCUSSION

¶ 30. This case raises several interesting questions regarding the interaction between post-trial civil and criminal procedure, as well as regarding the inherent authority of the courts. We will address these issues as they arise in the context of Henley's claims in this case.

¶ 31. Henley asks that the circuit court's award of a new trial in the interest of justice be upheld on any of three bases: (1) Wis. Stat. § 805.15(1); (2) Wis. Stat. § 806.07(1)(g) or (h); or (3) the circuit court's inherent authority. In essence, Henley suggests that a circuit court has inherent and statutory authority to grant a new trial in the interest of justice to a convicted

560

criminal defendant regardless of the case's procedural posture, regardless of how many times the same issues have been litigated, and regardless of how many years may have passed since the defendant's conviction. In the event that we reject Henley's arguments for the circuit court's authority (which we do), Henley asks that we use our inherent or statutory authority to grant him a new trial.

¶ 32. In Part A, we analyze whether the circuit court had authority to order a new trial in the interest of justice under Wis. Stat. § 805.15(1). We conclude that § 805.15(1) is not an available procedural mechanism for Henley to seek a new trial. In Part B, we examine whether the circuit court's award of a new trial can be upheld alternatively under Wis. Stat. § 806.07(1)(g) or (h). Again, we conclude that these provisions are not available to Henley. In Part C, we address whether Wisconsin circuit courts possess inherent authority apart from any statutory or common law procedural mechanism to order a new trial at any time for any criminal defendant. We conclude that they do not. Finally, in Part D, we address, in the exercise of our statutory authority, whether Henley is entitled to a new trial in the interest of justice. We ultimately conclude that Henley is not entitled to a new trial.

A. Wisconsin Stat. § 805.15(1)

¶ 33. Henley first urges that the circuit court had authority under Wis. Stat. § 805.15(1) to grant him a new trial. He argues both that § 805.15(1) provides statutory grounds for a circuit court to order a new trial in the interest of justice for criminal defendants, and that such a motion may be brought at any time because the time limits governing such motions in § 805.16(1) are inapplicable in criminal cases.

561

¶ 34. The State agrees that § 805.15(1) is a proper vehicle for criminal defendants to seek a new trial in the interest of justice. However, it maintains that any such motion must be brought within 20 days following conviction pursuant to § 805.16(1).

¶ 35. In its amicus brief, the Office of the State Public Defender argues that neither § 805.15(1) nor § 805.16(1) are applicable to criminal cases; these govern new trials in the interest of justice in only civil cases.[17]

¶ 36. Thus, the question is whether § 805.15(1) is a proper statutory vehicle for criminal defendants seeking a new trial in the interest of justice, and if it is, whether such a motion is governed by the time restrictions in § 805.16(1).

¶ 37. Wisconsin Stat. § 805.15(1) provides:

> Motion. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. (Emphasis added.)

¶ 38. Wisconsin Stat. § 805.16 is entitled, "Time for motions after verdict." It provides in relevant part:

> (1) Motions after verdict shall be filed and served within 20 days after the verdict is rendered, unless the court, within 20 days after the verdict is rendered, sets a longer time by an order specifying the dates for filing motions, briefs or other documents.

---

[17] The amicus brief from the Office of the State Public Defender nonetheless urges us to affirm the circuit court's award of a new trial, but on the grounds of the circuit court's inherent authority.

¶ 39. We agree with the State Public Defender that § 805.15(1) does not provide statutory grounds for a criminal defendant to seek a new trial in the interest of justice. We reach this conclusion because: (1) the text of § 805.15(1) suggests that it applies to civil cases only; (2) the text of § 805.16(1) suggests that the 20–day time limit applies to motions under § 805.15(1), but such a time limit is absurd in the criminal context; (3) §§ 974.02 and 974.06, by their terms, provide the primary statutory means of postconviction, appeal, and post-appeal relief for criminal defendants, and allowing motions under § 805.15(1) renders these provisions irrelevant; and (4) the statutory history of §§ 805.15, 805.16, and 974.02 reveal that §§ 805.15(1) and 805.16(1) do not apply to criminal cases.

¶ 40. First, § 805.15(1) provides textual clues that it does not apply to criminal cases. This subsection refers to motions after "verdict." In a criminal case, such motions are called "postconviction" motions. *See* Wis. Stat. § (Rule) 809.30(1)(c) & (2)(a). Additionally, § 805.15(1) refers to "excessive or inadequate damages" as one of the grounds for a motion. Such a motion would apply only in civil cases. While not dispositive, these textual clues support our conclusion that § 805.15(1) does not apply to criminal defendants.

¶ 41. Second, the text of § 805.16(1) makes clear that it applies to motions made under § 805.15(1). The time limits in § 805.16(1) apply to "[m]otions after verdict." A motion "for a new trial . . . in the interest of justice" under § 805.15(1) is, by definition, a motion after the verdict. If this does not make it plain enough, § 805.16(4) states that the 20–day post-verdict time limit in § 805.16(1) does not apply to motions for a new

trial based on newly discovered evidence. Newly discovered evidence is one of the motions, along with a new trial in the interest of justice, authorized by § 805.15(1). In other words, by creating an exception, the statute clearly assumes that a motion for a new trial because of newly discovered evidence authorized by § 805.15(1) is a motion after the verdict and would otherwise be governed by the 20–day time limit.

¶ 42. Henley does not appear to dispute this textual evidence limiting motions under § 805.15(1) to those filed within the time limits specified in § 805.16(1). Rather, Henley points to § 972.11(1), which states that civil rules apply to criminal cases "unless the context of a section or rule manifestly requires a different construction." Henley maintains that the 20–day time limit in § 805.16(1) cannot apply to motions under § 805.15(1) in the criminal context because such a construction would be absurd. The statute, Henley recognizes, requires motions after verdict to be filed and served within 20 days after the "verdict" is rendered. But Henley points out that in criminal cases, the verdict is not the end of the case; sentencing still must follow. This means that a motion for a new trial in the interest of justice would, in many cases, need to be filed before the sentence has been imposed and before appellate counsel has even been appointed. This would create piecemeal consideration of postconviction issues, and if a § 805.15(1) motion were raised, might foreclose the consideration of issues before a full review of the case by appellate counsel. The State's position, Henley argues, simply does not make sense.

¶ 43. We agree with Henley that the State's interpretation of the statute does not work. However, neither does Henley's. Henley argues that the time limits, clearly applicable in the civil context, do not apply in

the criminal context. Rather, under Henley's approach, § 805.15(1) is available to criminal defendants without a time limit! This cannot be, either.

¶ 44. Henley should not be looking to the civil statutes for guidance regarding his postconviction options. The legislature has already created § 974.02 and § 974.06, which, by their terms, provide the primary statutory means of postconviction relief for criminal defendants. *See State ex rel. Coleman v. McCaughtry,* 2006 WI 49, ¶ 16, 290 Wis. 2d 352, 714 N.W.2d 900 (noting that a convicted criminal defendant may seek postconviction relief with a postconviction motion and direct appeal under § 974.02 and § (Rule) 809.30, and may collaterally attack his conviction under § 974.06 or via a petition for a writ of habeas corpus).

¶ 45. Chapter 974 of the Wisconsin Statutes is entitled, "Criminal Procedure—Appeals, New Trials and Writs of Error." Thus, although civil procedural mechanisms exist, the legislature has specifically created a separate chapter governing criminal procedure.

¶ 46. Within that chapter, § 974.02 applies to, as its title states, "[a]ppeals and postconviction relief in criminal cases." Subsection (1) states in relevant part:

> A motion for postconviction relief other than under s. 974.06 or 974.07(2) by the defendant in a criminal case *shall be* made in the time and manner provided in s. 809.30. An appeal by the defendant in a criminal case from a judgment of conviction or from an order denying a postconviction motion or from both *shall be* taken in the time and manner provided in ss. 808.04(3) and 809.30. (Emphasis added.)

¶ 47. The language here is exclusive and unequivocal. With the exception of motions under § 974.06 (discussed below) or under § 974.07(2) (relating to DNA

testing), a motion for postconviction relief by a criminal defendant "shall be" governed by § (Rule) 809.30. Similarly, an appeal by a criminal defendant from a judgment of conviction or denial of a postconviction motion or both "shall be" governed by § 808.04(3) and § (Rule) 809.30. Section 808.04(3) states, "Except as provided in subs. (4) and (7), an appeal in a proceeding under s. 971.17, a *criminal case,* or a case under ch. 48, 51, 55, 938, or 980 shall be initiated within the time period specified in s. 809.30(2) or 809.32(2), whichever is applicable." (Emphasis added.) Subsection (4) applies to appeals by the State, and subsection (7) relates to adoption orders. Section (Rule) 809.32 applies only to no-merit reports. In other words, § 974.02 states that postconviction relief and appeals by criminal defendants like Henley "shall be" governed by § (Rule) 809.30.

¶ 48. Section (Rule) 809.30 establishes very specific procedures and time limitations for pursuing postconviction relief. It delineates procedures and deadlines for giving notice of intent to move for postconviction relief or appeal.[18] It also gives instructions for creating the record[19] and securing appointment of counsel.[20] Section (Rule) 809.30(2) makes clear that persons seeking postconviction relief—defined in § (Rule) 809.30(1)(c) as an appeal or a motion for postconviction relief—"shall comply with this section."

¶ 49. Thus, § 974.02 and § (Rule) 809.30 indicate that convicted criminal defendants wishing to challenge

---

[18] Notice of intent to pursue postconviction relief must be made within 20 days after sentencing. Wis. Stat. § (Rule) 809.30(2)(b).

[19] *See* Wis. Stat. § (Rule) 809.30(2)(e)-(g).

[20] *See* Wis. Stat. § (Rule) 809.30(2)(d)-(e).

their conviction through a postconviction motion, appeal, or both, must abide by these sections.

¶ 50. Similarly, § 974.06 provides the primary statutory mechanism for convicted criminal defendants "[a]fter the time for appeal. or postconviction remedy provided in s. 974.02 has expired." Section 974.06(1) provides:

> After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court or a person convicted and placed with a volunteers in probation program under s. 973.11 claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

¶ 51. Section 974.06 was created in 1969. According to the annotations, the section "represents the first Wisconsin attempt at a comprehensive post-conviction statute which will afford *an all encompassing remedy* for defendants challenging their convictions." (Emphasis added.) This statute was "designed to replace habeas corpus as the primary method in which a defendant can attack his conviction after the time for appeal has expired." *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 176, 517 N.W.2d 157 (1994) (quoting Howard B. Eisenberg, *Post-Conviction Remedies in the 1970's,* 56 Marq. L. Rev. 69, 79 (1972)). The goal of § 974.06 was to create a comprehensive strategy that involved:

567

(1) providing a single, unitary, postconviction remedy to be used in place of all other state remedies (except direct review); (2) providing a remedy for all grounds for attacking the validity of a conviction or sentence in a criminal case; and (3) requiring a defendant to present all of his or her claim(s) for attack on a conviction or sentence in his or her initial postconviction proceeding, unless there exists a sufficient reason why the claim(s) were not raised in the initial proceeding.

*State v. Lo,* 2003 WI 107, ¶ 20, 264 Wis. 2d 1, 665 N.W.2d 756. Since its adoption, the substantive portions of § 974.06 have remained unchanged, except for the addition in 1977 that § 974.06 is only available "[a]fter the time for appeal or postconviction remedy provided in s. 974.02 has expired."

¶ 52. After a convicted criminal defendant's rights under § 974.02 have been exhausted, the primary method of challenging a conviction is § 974.06. We have stated that a § 974.06 motion "is limited in scope to matters of jurisdiction or of constitutional dimensions. The motion must not be used to raise issues disposed of by a previous appeal." *Peterson v. State,* 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972). We have further explained that issues cannot form the basis for a § 974.06 motion unless a "sufficient reason" exists for the failure to allege or adequately raise the issue on appeal or in a previous § 974.06 motion. *Escalona-Naranjo,* 185 Wis. 2d at 181—82.

¶ 53. Section 974.06, then, was clearly designed to be the primary statutory vehicle[21] for a convicted

---

[21] Outside of § 974.06, defendants may still file the following:

criminal defendant to challenge his confinement following the exhaustion of his postconviction and appeal rights under § 974.02. The goal of this statute, a goal central to the fair and efficient administration of justice, is finality. *Escalona-Naranjo,* 185 Wis. 2d at 185 ("We need finality in our litigation.").

¶ 54. In § 974.02, the legislature has created a process where claims must be raised immediately through the postconviction and/or appeals process.[22] Then, once this process is finished, a limited right of review exists pursuant to § 974.06 to challenge the conviction on the grounds that it violates the state or federal constitution, that the court lacked jurisdiction, or that the sentence was in excess of the law or is subject to collateral attack on some other basis. Such claims, of course, are subject to the procedural bar articulated in *Escalona-Naranjo.*

¶ 55. Allowing motions in the interest of justice under § 805.15(1) at any time renders limitations under § 974.02 and § 974.06 irrelevant. These statutes would make no sense if motions under § 805.15(1) could be brought at any time. No criminal defendant would limit

(1) a petition for a writ of habeas corpus in federal court (28 U.S.C. § 2254 (2000));

(2) a writ of error *coram nobis* (*see Jessen v. State,* 95 Wis. 2d 207, 290 N.W.2d 685 (1980));

(3) a state habeas petition challenging the effectiveness of postconviction counsel (*see State ex rel. Rothering v. McCaughtry,* 205 Wis. 2d 675, 556 N.W.2d 136 (Ct. App. 1996)); and

(4) a petition challenging his appellate attorney's effectiveness (*see State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992)).

[22] A separate statute governs appeals by the State. *See* Wis. Stat. § 974.05.

themselves to bringing a motion under § 974.06, for example, if the broader grounds in § 805.15 were always available, no matter how many times a motion on those same grounds had been brought, and no matter how long it had been since the conviction. Henley's construction of § 805.15(1) and § 805.16(1), then, which would allow convicted criminals to bring a motion for a new trial whenever they want, is plainly unreasonable. Indeed, the context of § 805.15(1) manifestly requires a different construction than the one offered by Henley. *See* § 972.11(1).

¶ 56. Finally, the statutory history of §§ 805.15, 805.16, 974.02, and (Rule) 809.30 make clear that §§ 805.15(1) and 805.16(1) do not apply to criminal cases.

¶ 57. Before 1975, the Wisconsin Statutes had separate, nearly identical provisions governing motions for new trials. Section 270.49(1) (1971–72) governed motions for new trials in civil cases. It provided:

> Motion for new trial. (1) A party may move to set aside a verdict and for a new trial because of errors in the trial or because the verdict is contrary to law or to the evidence, or for excessive or inadequate damages or in the interest of justice; but such motion must be made and heard within 2 months after the verdict is rendered.

Section 270.50 (1971–72) provided separate grounds for a new trial in the event of newly discovered evidence; such a motion was required to be made within one year of the verdict or finding.

¶ 58. Section 974.02(1) (1971–72), on the other hand, was the analogous and nearly identical provision covering criminal cases:

570

New trial. (1) In felonies,[23] a defendant may move in writing or with the consent of the state on the record to set aside a judgment of conviction and for *a new trial in the interest of justice,* or because of error in the trial or because of error in the jury instructions, or because the judgment of conviction is not supported by the evidence or is contrary to law, or based on newly discovered evidence; but such motion must be made, heard and decided within 90 days after the judgment of conviction is entered. (Emphasis and footnote added.)

Thus, this criminal procedure statute expressly provided for a new trial in the interest of justice. Such a motion was required to be heard and decided within 90 days of the judgment of conviction.

¶ 59. In 1975, § 270.49 and § 270.50 were rewritten and relocated. Two new statutes were created— § 805.15 and § 805.16. The Judicial Council Committee's Note, 1974, to § 805.15 stated its purpose: "The first sentence of sub.(1) restates the grounds on which new trials have been allowed in Wisconsin under ss. 270.49–.50." The new § 805.15 did not contain the time limitations for such motions; these were placed in the new § 805.16. These statutes continued to use substantially the same language from the old § 270.49, basing the opportunity and time frame for such motions on the *verdict.*

¶ 60. At the same time it made these changes to civil post-verdict procedure, the legislature left untouched the analogous passage in § 974.02. It still provided for motions for a new trial in the interest of justice, among other reasons, and retained the requirement that such motions be "made, heard and decided

---

[23] Misdemeanor appeals were separately governed by Wis. Stat. § 974.01 (1971–72).

within 90 days after the judgment of conviction is entered," unless extended. § 974.02 (1975–76).

¶ 61. Thus, the statutory history makes clear that § 805.15 was *not* intended to apply to criminal appeals, and that the legislature retained separate (though similar) processes and grounds for criminal appeals in § 974.02.

¶ 62. The legislature acted again in 1977 to revise the criminal code. It made several changes, including changes to § 974.02. The new version provided that criminal appeals and motions for postconviction relief in felony cases (along with several other violations) were required to "be taken in the time and manner provided in ss. 809.30 and 809.40." Sections (Rule) 809.30 and (Rule) 809.40 were newly created sections, the former applying to felony criminal cases, among other things, and the latter applying to misdemeanors.[24] Left out of the new version of § 974.02 were the various grounds for appeal or postconviction relief, including a new trial in the interest of justice. The legislative history does not indicate why the legislature removed these stated grounds. Though the legislature made minor wording variations in the intervening years, §§ 805.15(1), 805.16(1), and 974.02 have remained substantially the same since the 1977 revisions.

¶ 63. This raises the question—can convicted criminal defendants still seek a new trial in the interest of justice? The answer is certainly yes. The elimination of the specific grounds for relief in § 974.02 did not eliminate the right to seek postconviction relief on

---

[24] The current version of § (Rule) 809.30 applies, with some exceptions, to all criminal cases, including misdemeanors. *See* Wis. Stat. § (Rule) 809.30(2)(a).

those grounds; those grounds are simply not itemized in the statute. Motions for a new trial in the interest of justice are routinely brought during the postconviction motion and appeals process under § 974.02 and § (Rule) 809.30.[25] *See, e.g., State v. Johnson,* 135 Wis. 2d 453, 455, 400 N.W.2d 502 (Ct. App. 1986) (as part of defendant's appeal, considering whether defendant was entitled to a new trial in the interest of justice); L. Michael Tobin & Patrick J. Devitt, *Wisconsin Criminal Defense Manual,* § 9.11 (2008) (stating that a motion for a new trial is generally part of postconviction practice under § (Rule) 809.30, and one of the grounds for such a motion is the interest of justice). During the appellate process under § 974.02 and § (Rule) 809.30, defendants may also appeal to the discretionary power of the court of appeals to order a new trial in the interest of justice under § 752.35,[26] and to our similar power in an appeal before this court under § 751.06.

¶ 64. The confusion over this appears to be the reason why some courts have considered a criminal defendant's motion for a new trial in the interest of justice to be under § 805.15. Henley points, for example, to *State v. Harp* (*Harp II*), which affirmed the circuit court's discretionary authority to order a new trial in

[25] For the reasons explained above, a motion for a new trial in the interest of justice under § 974.06 would not pass muster unless it involved one of the types of claims allowed by the statute, and unless it was associated with a more specific "sufficient reason" allowing it to pass the *Escalona* bar.

[26] The court of appeals' jurisdiction is primarily appellate, with original jurisdiction "only to issue prerogative writs." Wis. Stat. § 752.01(1)-(2). Therefore, a motion seeking a new trial under § 752.35 would have to occur during an appeal under Wis. Stat. § 974.02. The text of § 752.35 also limits its applicability to "an appeal to the court of appeals."

the interest of justice under § 805.15(1). 161 Wis. 2d 773, 775, 469 N.W.2d 210 (Ct. App. 1991). Importantly, the award of a new trial in the interest of justice in *Harp II* came in response to the defendant's motion for postconviction relief under § 974.02. *See State v. Harp* (*Harp I*), 150 Wis. 2d 861, 867, 443 N.W.2d 38 (Ct. App. 1989). It was not a separate motion untethered from the normal criminal postconviction process (§ 974.02). The court of appeals in *Harp II* rightly concluded that the circuit court may order a new trial in the interest of justice, and stated that the standard was identical to the standard outlined for the court of appeals in § 752.35. *Harp II,* 161 Wis. 2d at 779. The court's focus in that case was on the proper standard for a new trial in the circuit court in the interest of justice, not whether the motion was properly brought under § 805.15(1). Other courts, including this court, have similarly construed a criminal defendant's motion for a new trial in the interest of justice during the postconviction and appeals process as one under § 805.15(1). *See, e.g., State v. Vennemann,* 180 Wis. 2d 81, 85–86, 508 N.W.2d 404 (1993); *State v. Williams,* 2006 WI App 212, ¶ 10, 296 Wis. 2d 834, 723 N.W.2d 719; *State v. Bellows,* 218 Wis. 2d 614, 618, 582 N.W.2d 53 (Ct. App. 1998); *State v. Brewer,* 195 Wis. 2d 295, 311–12, 536 N.W. 2d 406 (Ct. App. 1995). Other Wisconsin courts have recognized that motions under § 805.15(1) are not available to criminal defendants. *See, e.g., State v. Olson,* No. 2009AP2894, unpublished slip op., ¶ 6 (Wis. Ct. App. May 18, 2010).

¶ 65. We are aware of no Wisconsin court that has countenanced a motion by a criminal defendant for a new trial in the interest of justice under § 805.15(1) untethered from the normal postconviction motions

and appeals process specified in § 974.02 and § (Rule) 809.30. We therefore make clear that criminal defendants may request a new trial in the interest of justice as part of their postconviction motions and appeal under § 974.02 and § (Rule) 809.30. Such motions should not be construed as motions under § 805.15(1).

¶ 66. Accordingly, § 805.15(1) is not a proper vehicle for a criminal defendant to seek a new trial in the interest of justice. Therefore, the circuit court erred in relying on this statute when it granted Henley a new trial.

### B. Wisconsin Stat. § 806.07

¶ 67. Henley also argues that Wis. Stat. § 806.07(1)(g) and (h) are independent grounds upon which the circuit court's award of a new trial may be sustained. Though it was not raised in the lower courts, we choose to address this argument as it was briefed by the parties and will assist in clarifying the law.

¶ 68. Section 806.07(1) provides in relevant part:

(1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3) may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

. . .

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

Section 806.07(2) further provides that "[t]he motion shall be made within a reasonable time."

¶ 69. Wisconsin law is clear that § 806.07(1)(g) applies only in equitable actions. *Nelson v. Taff*, 175 Wis. 2d 178, 187–88, 499 N.W.2d 685 (Ct. App. 1993). This is a criminal action, not an equitable action, and therefore the circuit court does not have authority under this subsection to grant Henley a new trial.

¶ 70. Section 806.07(1)(h) is a civil procedure statute, and is unavailable for many of the same reasons § 805.15(1) is unavailable. If convicted criminal defendants can use § 806.07(1)(h) to challenge their conviction, why would they ever use §§ 974.02 and 974.06? The answer is, they would not. Henley cites no cases holding that this provision is available for criminal defendants.[27] Sections 974.02 and 974.06 were written to provide the primary statutory means of postconviction, appeal, and post-appeal relief for convicted criminal defendants. *See supra* ¶¶ 44–55.

¶ 71. The catch-all provisions in § 806.07(1)(g) and (h), then, cannot provide an alternative ground to uphold the circuit court's grant of a new trial to Henley.

C. The Circuit Court's Inherent Authority

¶ 72. Henley argues, and the dissent agrees, that even if the circuit court does not have authority under § 805.15(1) or § 806.07, it nonetheless has inherent

---

[27] Henley does cite *In Interest of H.N.T.*, 125 Wis. 2d 242, 371 N.W.2d 395 (Ct. App. 1985), and our approval of it in *State v. Vairin M.*, 2002 WI 96, ¶¶ 36–39, 255 Wis. 2d 137, 647 N.W.2d 208. But this court authorized § 806.07 motions only for reconsideration in juvenile cases regarding waiver into adult court. *See id.*, ¶¶ 38–39. No cases hold that this provision is available for criminal defendants.

authority to order a new trial in the interest of justice without regard to time limits. Dissent, ¶ 128 The State agrees that circuit courts may order a new trial in the interest of justice, but only if done through a proper procedural mechanism.

¶ 73. It is beyond dispute that circuit courts have "inherent, implied and incidental powers." *State ex rel. Friedrich v. Circuit Court for Dane County,* 192 Wis. 2d 1, 16, 531 N.W.2d 32 (1995). These powers are those that are necessary to enable courts to accomplish their constitutionally and legislatively mandated functions. *Id.* Wisconsin courts have generally exercised inherent authority in three areas: (1) to guard against actions that would impair the powers or efficacy of the courts or judicial system; (2) to regulate the bench and bar; and (3) to ensure the efficient and effective functioning of the court, and to fairly administer justice. *Sun Prairie v. Davis,* 226 Wis. 2d 738, 749–50, 595 N.W.2d 635 (1999). A court is understood to retain inherent powers when those powers are needed to "maintain [the courts'] dignity, transact their business, [and] accomplish the purposes of their existence." *State v. Cannon,* 196 Wis. 534, 536, 221 N.W. 603 (1928). A power is inherent when it "is one without which a court cannot properly function." *State v. Braunsdorf,* 98 Wis. 2d 569, 580, 297 N.W.2d 808 (1980).

¶ 74. Recognizing a circuit court's inherent authority to order a new trial in this case would unwisely broaden the scope of the circuit court's inherent powers. As outlined above, we should only invoke inherent power when such power is necessary to the functioning of the court. Recognizing inherent authority to order a new trial here, where Henley seeks another crack at the same arguments that failed earlier, would take us far

577

beyond the more modest justifications for inherent authority.[28] We would effectively be extending an ongoing invitation to litigants to keep asking the circuit courts to revisit the same arguments over and over again, with no stopping point, much less a sensible one.

¶ 75. Put simply, the circuit court's authority to revisit old arguments must end somewhere. While defendants deserve a fair hearing, defendants do not deserve unlimited, duplicative hearings. The fair administration of justice is not a license for courts, unconstrained by express statutory authority, to do

---

[28] The dissent envisions a broad view of the circuit court's inherent power. *See* dissent, ¶ 105. As a practical matter, the dissent would hold that, not just for 10 years, but 20, 30, or 50 years after a conviction, a defendant can bring the exact same claims already denied multiple times and obtain a new trial.

The dissent draws support for this from dozens of cases—notably, almost all of them decades old (the first five cases it cites, for example, are from 1972, 1913, 1942, 1965, and 1963, respectively). *See id.* Why is this?

The reason is, early cases invoked inherent authority more often because the procedural rules governing courts were somewhere between non-existent and non-exhaustive. *See generally* Thomas O. Main, Judicial Discretion to Condition, 79 Temp. L. Rev. 1075, 1111–15 (2006) (noting generally that the scope of a court's inherent authority is inversely related to the breadth of procedural statutes and rules the court is subject to). As federal and state courts became subject to more comprehensive rules schemes, the need for inherent authority lessened. *Id.* The dissent fails to recognize the historical justifications for and evolution of a court's inherent authority.

Because it glosses over the rationale for inherent authority, the dissent is led to propose a sweeping, all-encompassing authority that effectively turns our criminal procedure statutes, including § 974.02 and § 974.06, into mere regulatory suggestions at best, and unconstitutional usurpations of judicial power at worst.

whatever they think is "fair" at any given point in time.[29] Rather, any conception of the fair administration of justice must include the principle of finality. Thus, while circuit courts do have inherent powers, we do not recognize a broad, inherent power to order a new trial in the interest of justice at any time, unbound by concerns for finality and proper procedural mechanisms.

¶ 76. Moreover, if a circuit court has the inherent power to order a new trial in the interest of justice at

---

[29] To support its expansive views of inherent authority, the dissent cites Article 1, Section 9 of the Wisconsin Constitution. *See* dissent, ¶¶ 111, 115, 120–21. This provision states in relevant part, "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character." Wis. Const. art. I, § 9.

But we have made clear that this provision does not entitle litigants to the remedy they desire, but only to their day in court. *Wiener v. J.C. Penney Co.*, 65 Wis. 2d 139, 222 N.W.2d 149 (1974). Here, Henley has more than had his day in court. He forwards the exact same claims that were previously rejected by the circuit court, the court of appeals, this court, and the Western District of Wisconsin.

Moreover, we have made clear that the legislature can impose "reasonable limitations upon the remedies available to parties." *Id.* at 151. The legislature has imposed reasonable limitations; it created § 974.06.

Finally, we note that this court's unwarranted expansion of its own powers through Article 1, Section 9 has recently been checked. In *Gibson v. Am. Cyanamid Co.*, the Eastern District of Wisconsin held that this court's holding in *Thomas v. Mallett*, 2005 WI 129, 285 Wis. 2d 236, 701 N.W.2d 523, which created a new remedy under Article 1, Section 9, was arbitrary and irrational and violated the Fourteenth Amendment. *Gibson*, 2010 U.S. Dist. LEXIS 59378, slip op., *16–18 (E.D. Wis. June 15, 2010). Despite the dissent's broad description of our inherent authority, we simply do not have the authority to craft any remedy we want.

any time for any reason, including when the litigant has already raised the same claims (as is the case here), we must again ask—what would be the point of § 974.06? No criminal defendant challenging his conviction following the postconviction motion and appeals process would limit themselves to the restrictive grounds and high bar in § 974.06. Recognizing or granting a circuit court's inherent authority here would open the courts to claim after claim and render the restrictions in § 974.06 illusory.

¶ 77. For these reason, we conclude that the circuit court did not have the inherent power to order a new trial for Henley in the interest of justice.

### D. Our Inherent and Statutory Authority

¶ 78. Thus far, we have determined that the circuit court did not have authority to order a new trial for Henley in the interest of justice under § 805.15(1), § 806.07(1)(g) or (h), or under its inherent powers. Its actions were not based on any legal authority.

¶ 79. Henley asks that even if we do not recognize the circuit court's authority to act, we consider using our inherent or statutory authority to order a new trial for Henley in the interest of justice.

¶ 80. We decline to use our inherent authority in this case and instead choose to conduct our review under our broad statutory powers. We have been given statutory authority to order a new trial under § 751.06. That statute provides:

> Discretionary reversal. In an appeal in the supreme court, if it appears from the record that the real

controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

■

¶ 81. Under this authority, Henley may be awarded a new trial if "the real controversy has not been fully tried" or if "it is probable that justice has for any reason miscarried." *Id.* The real controversy has not been fully tried when "the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case." *State v. Hicks,* 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). The court need not find a substantial probability of a different result to make this finding. *See State v. Armstrong,* 2005 WI 119, ¶ 114 n.26, 283 Wis. 2d 639, 700 N.W.2d 98 (2005). A miscarriage of justice occurs if a defendant can show a substantial probability of a different outcome. *State v. Schumacher,* 144 Wis. 2d 388, 400–01, 424 N.W.2d 672 (1988).

¶ 82. We conclude that the controversy here has been fully tried. Henley's main assertion is that Demain's testimony should have been included at trial. But we are not as persuaded as the Seventh Circuit that the absence of this evidence was so critical. Demain's testimony would have been largely duplicative of what Sheets related in her testimony regarding the circumstances of S.E.S. and the men going to their room. It cannot be said that such evidence was not placed before

the jury. That Demain saw S.E.S. standing outside with the defendants at some unspecified time that evening, furthermore, is not critical. Counsel for both defendants vigorously cross-examined S.E.S. and challenged her credibility. Although Demain's testimony may have added some benefit to that issue, we cannot say that her credibility was not tried to the jury.

¶ 83. We also do not see a miscarriage of justice. Demain's testimony would not, in our view, have created a substantial probability of a different result. The fact of the Seventh Circuit's decision is revelatory of nothing new, and was essentially a disagreement with the Wisconsin Court of Appeals in regard to the import of Demain's testimony. Demain's testimony might have added some doubt regarding how many of the men accompanied her to her room, and whether they were invited. The import of S.E.S. possibly smoking with the men is difficult to ascertain because we do not know whether this was before or after the sexual assault. While it is possible that Demain's testimony would have affected the outcome,[30] we cannot say there is a substantial probability that this is so.

¶ 84. To say Henley has had his day in court is an understatement; the circuit court, Wisconsin Court of Appeals, this court (by virtue of previously declining to take the case), and the U.S. District Court all reviewed the claim that Henley was entitled to a new trial in the interest of justice to permit Demain to testify. Henley lost on all levels, and did not appeal to the Seventh

---

[30] We also note that the Seventh Circuit may have given more weight to the power of Demain's testimony in Hill's second trial (which resulted in a hung jury) than is warranted. Hill himself testified in that trial, while Henley and Adams did not. Thus, Demain's testimony may not explain any part of Hill's success.

Circuit. Since those denials, nothing has changed regarding the underlying bases for Henley's efforts to secure a new trial. Like the courts that reviewed and denied these claims previously, we do not believe that justice requires a new trial now.

## V. CONCLUSION

¶ 85. In cases like this, the temptation may arise for courts to create a new procedural protection or new remedy unfounded in the law to fit the facts of a very difficult case. But the old adage is still true—hard facts make bad law. We choose to not make bad law.

¶ 86. We hold that neither Wis. Stat. § 805.15(1) nor § 806.07(1)(g) and (h) are available procedural mechanisms for a criminal defendant to challenge his or her conviction or sentence. We further hold that circuit courts in Wisconsin do not have the inherent authority to order a new trial in the interest of justice when a case is not before it under a proper procedural mechanism. Therefore, the circuit court did not have the authority to order a new trial in this case. Finally, we decline to exercise our authority to order a new trial for Henley because his case was fully tried and justice has not miscarried. Accordingly, the decision of the circuit court is reversed with instructions to deny Henley's motion for a new trial.

*By the Court.*—The order of the circuit court is reversed and the cause remanded for entry of an order denying Henley's motion.

¶ 87. DAVID T. PROSSER, J. (*concurring*). Understanding the procedural background of this case is vital to understanding its importance.

## PROCEDURAL HISTORY

¶ 88. Dimitri Henley was one of three defendants charged with the sexual assault of a young student at the University of Wisconsin-Whitewater in 1998. His first trial in 1999 ended in a mistrial. His second trial in 2000 ended in a conviction of five counts of second-degree sexual assault.

¶ 89. Henley's postconviction counsel was different from his trial counsel, and his postconviction counsel argued to the circuit court that Henley's trial counsel had provided ineffective assistance for failing to present testimony from Shawn Demain. Henley's motion led to a *Machner*[1] hearing, but the motion was denied.

¶ 90. Henley then appealed. Among the issues argued to the court of appeals was that trial counsel was ineffective for failing to call Shawn Demain as a witness for the defendant at trial. The court of appeals affirmed the conviction.

¶ 91. Henley petitioned this court for review, but his petition was denied.

¶ 92. Henley filed a pro se motion pursuant to Wis. Stat. § 974.06 in late 2002. It was denied, and he did not appeal.

¶ 93. He then petitioned the United States District Court for the Western District of Wisconsin for a writ of habeas corpus under 28 U.S.C. § 2254. The court denied relief, and Henley did not appeal.

¶ 94. Considering this background, Henley is similar to hundreds, if not thousands, of other criminal defendants in Wisconsin who have filed successive

---

[1] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

postconviction motions in an effort to overturn their convictions. His case is different only because his two co-defendants are not behind bars: Rovaughn Hill was never convicted and Jarrett Adams's conviction was overturned by the United States Court of Appeals for the Seventh Circuit.

¶ 95. Henley has always claimed that the sexual contact for which he was convicted was consensual, but the essence of his claim now is that he has not been treated the same as his two co-defendants and deserves a new trial.

## POSTCONVICTION RELIEF

¶ 96. A defendant, of course, has the right to appeal a criminal conviction. Apart from the appeal, the defendant may file a whole host of motions after verdict in an effort to secure a new trial.

¶ 97. Wisconsin Stat. § 974.02 governs motions in the immediate aftermath of the trial. This is the time for a defendant to make motions for a new trial in the interest of justice. A defendant also may seek a discretionary reversal under Wis. Stat. §§ 751.06 (supreme court) or 752.35 (court of appeals) on direct appeal.

¶ 98. When the time for appeal or the postconviction remedy provided in Wis. Stat. § 974.02 has expired, a defendant may seek relief under Wis. Stat. § 974.06. However, there is no authority for the circuit court to grant a new trial in the interest of justice under § 974.06. This statute narrows the grounds for relief. Wis. Stat. § 974.06(1). Moreover, if § 974.06 motions were open to requests for a new trial in the interest of justice, the well-known limitations in § 974.06(4), as interpreted in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 177–78, 517 N.W.2d 157 (1994), and *State v. Lo,*

2003 WI 107, ¶ 14, 264 Wis. 2d 1, 665 N.W.2d 756, would become meaningless.

¶ 99. Henley has had multiple opportunities to seek postconviction relief. Thus, he knew he would have difficulty proceeding under § 974.06. His novel response was to file a motion in the circuit court pursuant to Wis. Stat. § 805.15(1) and/or Wis. Stat. § 806.07(1)(g) or (h). The court is *unanimous* in its conclusion that these statutes may not be used to seek a new trial in the interest of justice in a criminal case.

¶ 100. This brings us to the nub of this appeal. Three justices suggest that the circuit court has inherent authority to grant a new trial in the interest of justice, notwithstanding the long-standing, well-understood procedural barriers of § 974.06(4). The majority opinion of Justice Gableman rejects this proposition without qualification. I certainly do. The circuit court has no statutory power and no inherent authority to grant a new trial in the interest of justice except during the trial or in a timely motion under § 974.02.

¶ 101. If this court were to embrace the inherent authority espoused by the dissent, it would create an entirely new basis for postconviction relief in circuit courts and destroy the utility of Wis. Stat. § 974.06(4). The standards for postconviction motions set out in *Escalona-Naranjo* and explained again in *State v. Allen,* 2010 WI 89, 328 Wis. 2d 1, 786 N.W.2d 124, would be pointless. Decisions like *State v. Dearborn,* 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97, and *State v. Littlejohn,* 2010 WI 85, 327 Wis. 2d 107, 786 N.W.2d 123, would not mean anything because defendants would say, "Like Henley, I'm being treated differently, so I get another shot."

¶ 102. In this instance, rejecting inherent authority and limiting circuit court review to the terms of

§ 974.06, protects circuit courts from a deluge of successive claims. In this regard, quality is better than quantity. That is why this case is important.

¶ 103. For the reasons stated, I join the majority opinion and respectfully concur.

¶ 104. N. PATRICK CROOKS, J. (*dissenting*). The majority poses the question, "[C]an convicted criminal defendants still seek a new trial in the interest of justice?" It responds, "The answer is certainly yes."[1] Except, as here, when the answer is "certainly not." The majority's decision limits a circuit court's authority to grant a new trial in the interest of justice to those cases where the motion is filed within a 20–day window following sentencing[2]—a rule that implies that circuit courts cannot be trusted with the inherent authority to grant and reject such motions and implies as well that the majority can envision no case where "the interest of justice" cannot be ascertained and pursued within 20 days of a case's completion.

¶ 105. The stakes in this case are just about as high as any case a court decides: a man in his early 20s faces a 20–year prison sentence that has been stayed pending the outcome of this appeal. The unusual circumstances surrounding our review make it, as the majority acknowledges, "a very difficult case."[3] What brings the case to us is the fact that the circuit court—the same court which presided over Henley's trial—was sufficiently troubled by the potential significance of evidence not presented at Henley's trial that it took the rare step of granting Henley's motion for a new trial, so that a jury could evaluate the competing claims

---

[1] Majority op., ¶ 63.

[2] *Id.*, ¶¶ 46–49, 63.

[3] *Id.*, ¶ 85.

with the previously omitted testimony fully presented. I disagree with the majority that the circuit court erred in the act of granting the motion;[4] in fact, in so doing, it did exactly what circuit courts are asked to do. As one county court put it,

> This Court has the responsibility of safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice. In addition it has the obligation on its own initiative to correct real or apparent improprieties which would tend to lower esteem for the system of justice which it is bound to uphold.

*People v. Krstovich,* 338 N.Y.S.2d 132, 137–38 (N.Y. County Ct. 1972) (citing Standards Relating to the Function of the Trial Judge. American Bar Association Tentative Draft 1972, Standard 1.1 (subsequently adopted and published with commentary in ABA Standards for Criminal Justice: Special Functions of the Trial Judge, 2d ed. 1980)). We have recognized this great responsibility put upon the circuit court in stating that, "[T]his court is very loath to interfere with the discretion to grant new trials that is vested in circuit judges. It is a power that should be courageously and fearlessly exercised whenever a trial judge is convinced that to enter judgment on a verdict returned would result in a miscarriage of justice." *Schlag v. Chi., Milwaukee & St. Paul Ry. Co.,* 152 Wis. 165, 169–70, 139 N.W. 756 (1913). This court has said that a circuit court's authority to grant a new trial is "so necessary to

---

[4] It is true that the circuit court failed to identify the proper grounds for its authority to grant the new trial; I agree with the majority that Henley's motion is not properly brought under Wis. Stat. §§ 805.15(1), 805.16 and 806.07(g), (h). Majority op., ¶¶ 56, 69, 70–71.

the judicial process, and so essential to fair trials, that its existence is a necessary incident to the exercise of judicial power by the [circuit] court." *In re Noe's Estate,* 241 Wis. 173, 177, 5 N.W.2d 726 (1942). Discussing "the authority of a trial court to grant a new trial on its own motion," another court observed that "in those jurisdictions that have considered the question, the power is firmly established." *Freeman v. Chi. Transit Auth.,* 210 N.E.2d 191, 194 (Ill. 1965). It went on to explain, "These decisions are based upon a recognition that the role of a trial judge is not that of a presiding officer or an umpire, and that he is responsible for the justice of the judgment that he enters." *Id.* We should be grateful for judges who care deeply about the cases before them and strive mightily to see that just outcomes are reached. As one judge was quoted as saying, rather forcefully, "If we judges do not care about the way these cases are decided, and if we do not care enough to fight about them, then we are not worth the powder to blow us to hell, in my own personal opinion." *People on Complaint of Follar v. Finkelstein,* 239 N.Y.S.2d 835, 839 n.5 (N.Y. Crim. Ct. 1963) (Shalleck, J., dissenting). The point of a trial is to figure out what happened. "There is no gainsaying that arriving at the truth is a fundamental goal of our legal system." *U.S. v Havens,* 446 U.S. 620, 626 (1980). "[T]he central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . ." *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986). In this situation, the stark consequences of the failure to present crucial available evidence could not be more clear: in cases with identical charges based on the same facts, the trial outcomes were vastly different. That troubling fact is evident in the circuit court's order granting Henley's motion for a new trial. The circuit court who presided over Henley's trial cited

as grounds for its decision to grant the motion for a new trial that "Mr. Henley is uncontrovertibly in the same position as co-defendant Jarrett Adams," the co-defendant whose trial counsel's failure to call crucial witnesses was deemed by the Seventh Circuit Court of Appeals to constitute ineffective assistance of counsel. It is implicit in the circuit court's order that the justice system's disparate treatment of two equivalently situated defendants is repugnant to fundamental fairness, and such outcomes undermine the public's trust in the court system. Of course, the remedy for the disparity is no more than a new trial in which Henley is permitted to bring forth the testimony he wishes to put before the jury.

¶ 106. I would hold that a circuit court has inherent authority to grant a motion for a new trial where the real controversy has not been fully tried or there has been a miscarriage of justice. If a circuit court, exercising its inherent authority, grants a new trial in the interest of justice on the grounds that the real controversy has not been fully tried or there has been a miscarriage of justice, such a decision is, of course, appealable as an erroneous exercise of discretion and reviewable by the Wisconsin Court of Appeals and by the Wisconsin Supreme Court. *See e.g., Totsky v. Riteway Bus Serv., Inc.,* 2000 WI 29, ¶ 46, 233 Wis. 2d 371, 607 N.W.2d 637; *Behning v. Star Fireworks Mfg., Co., Inc.,* 57 Wis. 2d 183, 186, 203 N.W.2d 655 (1973) ("An order for a new trial in the interest of justice is within the discretion of a trial judge, and will be reversed only upon a clear showing there has been an abuse of discretion."). I would therefore review, and on the facts of this case, affirm, the circuit court's grant of Henley's motion for a new trial on the grounds that the real controversy in this case, the issue of whether the sex was consensual, was not fully

tried because crucial testimony concerning the complainant's witnessed conduct was not presented to the jury. Under such circumstances, the grant of the motion for a new trial was not an erroneous exercise of the circuit court's discretion. For clarification, I would hold that the court of appeals has the inherent and statutory authority to grant a new trial where the real controversy has not been fully tried or there has been a miscarriage of justice. I would further reaffirm this court's inherent and statutory authority to do the same.

## I. BACKGROUND

¶ 107. As the majority noted, this case has a fairly complex factual and procedural background, so it is helpful to highlight a few critical points. Henley, Jarrett Adams (Adams), and Rovaughn Hill (Hill) were, for all intents and purposes, in the same situation at the time charges were filed against them. There is no evidence suggesting that any one of the defendants had a greater or lesser role in the alleged crime. The three were initially tried together, but that resulted in a mistrial. Henley and Adams were then tried together as co-defendants a second time, and both were convicted. At that trial, both of their attorneys decided not to call any witnesses.

¶ 108. At Hill's separate trial, Hill called Shawn Demain (Demain) to testify. His testimony provided an account of the events of the evening in question that supported Heidi Sheets' (Sheets) testimony and contradicted much of the testimony of the alleged victim, S.E.S. Demain confirmed that Sheets and S.E.S. invited the men up to their room, which corroborated Sheets' testimony and contradicted S.E.S.'s statement that they entered her room uninvited. Additionally, Demain tes-

591

tified that he saw S.E.S., Hill, Adams, and Henley smoking outside together at least twenty minutes after Adams, Henley, and S.E.S. first left Demain's room.[5] This contradicted S.E.S.'s testimony because that would have been sometime during or after she stated that the sexual assault began. Hill's trial resulted in a hung jury. On the second day of Hill's third trial, as a result of newly-discovered evidence, the State moved to dismiss the case because the prosecutor stated that he did not believe he could "bear [his] burden of proof beyond a reasonable doubt at [that] point." The court dismissed Hill's case with prejudice, and he was later released from custody.

¶ 109. Henley and Adams both unsuccessfully appealed their convictions, and after those appeals failed, they sought assistance from the Wisconsin Innocence Project. Unfortunately for Henley, by the time the Innocence Project reviewed Henley's file, the statute of limitations for filing a petition for habeas corpus in federal court had passed.[6] Adams still had a short time left before the statute of limitations ran out, and with the help of the Innocence Project, he filed a federal

_____

[5] Demain did not actually name the people he saw outside smoking; however, it is clear from the context of his testimony to whom he was referring. He stated that he saw the "three black men," referring to Henley, Adams, and Hill as discussed in his version of the events of that night. Demain also stated he saw "the tall one" outside smoking, referring to S.E.S., as he had previously stated S.E.S. was taller than Sheets.

[6] Even though Henley and Adams were tried and convicted together, Henley's state appeal concluded before Adams' appeal. Because the statute of limitations for federal habeas relief commences when a defendant's direct state appeal process concludes, Henley's statute of limitations ran out before that of Adams.

habeas petition. Though the United States District Court for the Eastern District of Wisconsin denied his petition, the United States Court of Appeals for the Seventh Circuit reversed, finding that Adams' attorney acted unreasonably in failing to call Demain who "could [have] shed considerable, perhaps conclusive, light on the events of that night." *Adams v. Bertrand*, 453 F.3d 428, 437 (7th Cir. 2006). The Seventh Circuit found that Henley's co-defendant, Adams, was prejudiced by his counsel's ineffective representation; namely, his counsel's decision not to call Demain as a witness. *Id.* at 436–38.

¶ 110. After Adams' success in the Seventh Circuit, Henley filed a motion for a new trial in the interest of justice in the Jefferson County Circuit Court. The circuit court, the Honorable Jacqueline R. Erwin presiding, was persuaded by the Seventh Circuit's reasoning in *Adams* and granted Henley a new trial in the interest of justice, concluding that "the issue of consent, the real controversy, was not fully tried."

## II. DISCUSSION

### A. The Circuit Court's Inherent Authority.

¶ 111. After giving a brief nod to a circuit court's well recognized inherent authority, the majority so limits that inherent authority to the point that it is meaningless. First, the majority narrowly limits a circuit court's inherent authority to that which "is necessary to the functioning of the court." Majority op., ¶ 74. Second, the majority asserts that the circuit court's inherent authority may be exercised only when a case is "before it under a proper procedural mechanism." *Id.*, ¶ 86. With these limitations, a circuit court's inherent authority is little more than its statutory authority

along with whatever, in the majority's view, is "necessary to the functioning of the court." In its quest to ensure finality and thus deny Henley a new trial, the majority largely ignores the Wisconsin Constitution's grant of broad inherent authority to the circuit court. While a circuit court's inherent authority has its roots in the Wisconsin Constitution, Wis. Const. art. I § 9, art. VII, § 8, and has been broadly defined by this court, *State v. Cannon,* 196 Wis. 534, 536, 221 N.W. 603 (1928), the majority suggests that there exist only "modest justifications for inherent authority." Majority op., ¶ 74. After citing the test we developed in *City of Sun Prairie v. Davis,* 226 Wis. 2d 738, 750–51, 595 N.W.2d 635 (1999), for determining when an action is in excess of a circuit court's authority, the majority skips over this analysis and instead seemingly justifies its rejection of the circuit court's authority here based on the majority's desire to ensure a swift end to criminal appeals. Majority op., ¶¶ 74–76.

¶ 112. The majority incorrectly asserts that recognizing the circuit court's inherent authority to grant a new trial would "unwisely broaden the scope of the circuit court's inherent powers." *Id.,* ¶ 74. To the contrary, the scope was already broad. We have recognized previously the circuit court's inherent authority to grant a new trial. *See e.g., In re Noe's Estate,* 241 Wis. at 176–77; *Behning,* 57 Wis. 2d at 188; *Fontaine v. Fontaine,* 205 Wis. 570, 577, 238 N.W. 410 (1931) ("It has long been settled in this state that the court has power to grant a new trial in the interests of justice upon its own motion." (citing *Eggen v. Fox,* 124 Wis. 534, 102 N.W. 1054 (1905); *Koss v. A. Geo. Schulz Co.,* 195 Wis. 243, 218 N.W. 175 (1928)). It follows that where a defendant has not received a fair trial, a circuit court must have the

authority to correct such error as well, where either the case has not been fully tried or there has been a miscarriage of justice.

¶ 113. While the majority and concurrence suggest that statutory time limits restrict a circuit court's inherent authority, majority op., ¶ 74–76; concurring op., ¶¶ 100–102, we have consistently held that the legislature lacks the power to impose limits on a court's inherent authority because such authority is derived from the Wisconsin Constitution. *State v. Lee,* 88 Wis. 2d 239, 245–47, 276 N.W.2d 268 (1979). In *Lee,* this court addressed the question squarely and minced no words: "[I]t is within the discretion of the court, in its inherent power to do justice, to entertain the [untimely] motion at a later date." *Id.* at 246.

¶ 114. Contrary to the majority's conclusion, in my view the circuit court has inherent authority to grant criminal defendants a new trial where the real controversy has not been fully tried or there has been a miscarriage of justice. As noted, this inherent authority is derived from the Wisconsin Constitution's broad grant of original jurisdiction:

> Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction.

Wis. Const. art. VII § 8.

¶ 115. The Wisconsin Constitution further provides that one of the court's most basic functions is to provide a remedy for wrongs, including in appropriate situations fashioning relief where no adequate remedy exists. Wis. Const. art. I. § 9; *see D.H. v. State,* 76 Wis. 2d 286, 294, 251 N.W.2d 196 (1977); *but see Aicher*

*ex rel. LaBarge v. Wis. Patients Comp. Fund,* 2000 WI 98, ¶ 43, 237 Wis. 2d 99, 613 N.W.2d 849 (noting that Wis. Const. art. I § 9 does not confer any legal rights, but rather "preserves the right 'to obtain justice on the basis of the law as it in fact exists' ").

¶ 116. Consistent with this broad directive, this court has broadly defined the circuit court's authority to include powers specifically granted by the Wisconsin Constitution and the legislature along with certain inherent powers. As we have stated, "The [constitution's] general grant of original jurisdiction is substantially without limit by anything found in the constitution, over all actions, civil and criminal." *State ex rel. Attorney Gen. v. Portage City Water Co.,* 107 Wis. 441, 447, 83 N.W. 697 (1900). We have recognized that courts have the "inherent, implied and incidental powers" which "must necessarily be used to enable the judiciary to accomplish its constitutionally or legislatively mandated functions." *State ex rel. Friedrich v. Circuit Court for Dane County,* 192 Wis. 2d 1, 16, 531 N.W.2d 32 (1995) (internal quotations omitted). This court further recognized the type of inherent authority that allows a circuit court to grant a new trial in the interest of justice, stating "[t]he inherent power of the court is . . . the power to administer justice whether any previous form of remedy has been granted or not . . . and the power to provide process where none exists." *Cannon,* 196 Wis. at 536 (quoting *In re Bruen,* 172 P. 1152 (Wash. 1918)). We have established that, even on its own motion, a circuit court has the inherent authority to grant a new trial when an injustice has occurred. *Fontaine,* 205 Wis. at 577 ("It has long been settled in this state that the court has power to grant a new trial in the interests of justice upon its own motion."); *In re Noe's Estate,* 241 Wis. at 177 (holding a circuit court's authority to grant a new trial is "so

necessary to the judicial process, and so essential to fair trials, that its existence is a necessary incident to the exercise of judicial power by the [circuit] court"); *Behning,* 57 Wis. 2d at 188 (recognizing a circuit court's inherent authority to order a new trial in the interest of justice even when a proper motion is not before the court).

¶ 117. That does not mean that the circuit court's inherent authority is limitless, however. We discussed the boundaries of the court's inherent authority at length in *Davis,* 226 Wis. 2d 738. While recognizing the circuit court's broad inherent authority, we stated that it is limited to three main areas: (1) to perform the court's internal operations, (2) "to regulate members of the bench and bar," and (3) "to ensure that the court functions efficiently and effectively to provide the fair administration of justice." *Id.* at 749–50. Focusing on the third category, which is the relevant category here, we emphasized that the central inquiry into whether a power is inherent is whether it is "necessary for the efficient and orderly functioning of the court or to maintain the court's dignity, transact its business or achieve the purpose of its existence." *Id.* at 750–51. In other words, the circuit court has inherent authority to perform its most crucial and basic functions in order to fulfill its essential role in the justice system.

¶ 118. In Davis, we determined that the municipal court overstepped its authority in ordering an out-of-state defendant to appear personally because it did not serve any of the above functions. *Id.* at 752. Since counsel for the defendant was required to be present at trial, prepared to present evidence and speak on behalf of the client, we determined that the court could promptly and completely dispose of the case

597

without infringing upon these functions, and thus it did not have the authority to compel his appearance. *Id.* at 753–54.

¶ 119. Thus, the proper test to determine whether a circuit court has the inherent authority to grant a new trial where the real controversy was not fully tried or where justice has miscarried is whether that authority is "necessary for the efficient and orderly functioning of the court or to maintain the court's dignity, transact its business or achieve the purpose of its existence." *Id.* at 750–51.

¶ 120. The Wisconsin Constitution demands, and we have consistently confirmed, that one essential function of the circuit court "to maintain [its] dignity . . . [and] achieve the purpose of its existence" is the court's authority to correct errors where an injustice has occurred. *Id.*; *see* Wis. Const. art. I § 9; *see e.g., In re Noe's Estate,* 241 Wis. at 177 (circuit court's authority to grant a new trial is "so essential to fair trials, that its existence is a necessary incident to the exercise of judicial power by the [circuit] court"); *Pulaski v. State,* 23 Wis. 2d 138, 142, 126 N.W.2d 625 (1964) (circuit court has inherent authority to hear motion to withdraw a guilty plea and for a trial in the interest of justice); *Lee,* 88 Wis. 2d at 246 (inherent authority in similar circumstances); *State v. Schill,* 93 Wis. 2d 361, 377–79, 286 N.W.2d 836 (1980) (inherent authority in similar circumstances). Specifically, we have continuously confirmed a circuit court's inherent authority to allow withdrawal of an improperly accepted guilty plea and to grant a trial with little need to discuss this power's relation to the essential nature of the court. *Pulaski,* 23 Wis. 2d at 142; *Lee,* 88 Wis. 2d at 246; *Schill,* 93 Wis. 2d at 377–79. We have also held that a circuit court has the inherent authority to order a new

trial, "even though no motion is before" the court, where a judge concluded that the question presented to the jury was misleading. *Behning,* 57 Wis. 2d at 188. The court's authority to correct errors in the interest of justice is certainly one of its most basic functions, and thus it is within its inherent authority to do so.

¶ 121. It follows that if we recognize a court's inherent authority to allow withdrawal of a guilty plea and to grant a trial, we must also recognize its authority to grant a new trial where there has been an error denying the defendant a fair trial. Contrary to the majority's assertion, this would not "unwisely broaden the scope of the circuit court's inherent powers." Majority op., ¶ 74. As discussed above, the Wisconsin Constitution states, and we have confirmed, that the circuit court's inherent authority to correct injustice is broad. Wis. Const. art. I § 9, art. VII § 8; *Cannon,* 196 Wis. at 536; *In re Noe's Estate,* 241 Wis. at 177. Recognizing the circuit court's inherent authority to grant a new trial in this case will not have the disastrous effect on finality that the majority suggests, majority op., ¶¶ 75–76, because circuit courts will exercise this inherent authority as prudently here as they do in other respects, and this court and the court of appeals have developed standards for when that authority may be exercised. If a circuit court, exercising its inherent authority, grants a new trial in the interest of justice on the grounds that the real controversy has not been fully tried or there has been a miscarriage of justice, such a decision is, of course, appealable as an erroneous exercise of discretion and reviewable by the Wisconsin Court of Appeals and by the Wisconsin Supreme Court.

¶ 122. While we have not explicitly addressed the standard that a circuit court must apply when deciding whether to exercise its inherent authority to grant a

new trial, I would hold that such a standard is evident from previous decisions of this court and the court of appeals. The legislature developed standards for when this court or the court of appeals, respectively, may grant a new trial under § 751.06 and § 752.35. Under its statutory reversal authority, a court may grant a new trial where (1) "the real controversy has not been fully tried," or (2) "it is probable that justice has for any reason miscarried." Wis. Stat. §§ 751.06, 752.35 (2007–08). In *State v. Harp,* the court of appeals held that a circuit court must also apply this standard when deciding on a motion for a new trial under its statutory authority in § 805.15.[7] 161 Wis. 2d 773, 777–79, 469 N.W.2d 210 (Ct. App. 1991). In *State v. Armstrong,* we concluded that this statutory standard also applies to our inherent authority to grant a new trial in the interest of justice. 2005 WI 119, ¶ 114 n.26, 283 Wis. 2d 639, 700 N.W.2d 98. It follows, then, that this standard also applies to a circuit court's inherent authority to grant a new trial.

¶ 123. Thus, I would hold that a circuit court may grant a new trial under its inherent authority only where (1) "the real controversy has not been fully tried," or (2) "it is probable that justice has for any reason

---

[7] In *Harp,* the court of appeals addressed the proper standard with which a circuit court must decide a motion for a new trial under § 805.15 brought by a criminal defendant. It is important to note that, in my view, and consistent with the majority's holding, Wis. Stat. § 805.15 is not an available means for a criminal defendant to seek postconviction relief. The court of appeals did not directly address this issue in *Harp,* but its holding, that a circuit court may grant a new trial only when the real controversy has not been fully tried or justice has miscarried, is instructive and consistent with the appropriate standard I am satisfied should be applied.

miscarried." Wis. Stat. §§ 751.06, 752.35; *see State v. Hicks,* 202 Wis. 2d 150, 160–61, 549 N.W.2d 435 (1996). As we have previously noted, a request for a new trial is an extraordinary remedy, and a court should grant such a request only "in exceptional cases." *See Armstrong,* 283 Wis. 2d 639, ¶ 114.

¶ 124. With this standard and these limitations, recognizing a circuit court's inherent authority to grant a new trial does not give a defendant endless opportunities for a new trial or upset the principle of finality as the majority asserts. Majority op., ¶¶ 74–76. Rather such a remedy is restricted to a limited number of defendants. Henley is within the standard and the limitations since he remains without the opportunity for a full trial of the real controversy in this case unless he receives a new trial.

¶ 125. The majority insists that a circuit court's inherent authority is restricted by statutory procedures and time limits, *id.,* ¶¶ 76, 86; however, a court's inherent authority is entirely independent of its statutory authority. The Wisconsin Constitution confers circuit court jurisdiction, and therefore circuit court authority is not constrained by legislative directives. Wis. Const. art. VII § 2; *In the Matter of the Guardianship of Eberhardy v. Circuit Court for Wood County,* 102 Wis. 2d 539, 548, 307 N.W.2d 881 (1981). We have continuously affirmed that a circuit court's inherent authority is entirely independent of any statutory authority. *Pulaski,* 23 Wis. 2d at 142–43 (noting the circuit court's authority to allow withdrawal of a guilty plea is not derived from a statute, but rather stands upon the circuit court's inherent authority).

¶ 126. In *Lee,* we addressed whether this independent authority was subject to time limits imposed by statute and conclusively stated that it is not. 88 Wis. 2d

at 245–47. We concluded that the statutory time limit was "regulatory only" and not a jurisdictional bar to the circuit court's consideration of a motion to withdraw a guilty plea. *Id.* at 246–47. We held that the statute was not a jurisdictional constraint on the authority of the court. Moreover, we stated that any "contention that [the statute] imposes a legislative restriction on the power of the courts to do justice would pose a serious constitutional question." *Id.* at 247. We concluded that such a limitation was not the legislature's intent, and the circuit court has the authority to consider a motion to withdraw a guilty plea filed after the statutory deadline. *Id.* Despite this clear statement, neither the majority nor the concurrence acknowledges the consistency with which this court has explicitly affirmed the circuit court's inherent authority:

> It is clear, therefore, that Pulaski did not set a jurisdictional time limit for considering a motion to withdraw a plea. Pulaski also makes clear that a motion to withdraw a plea could be made beyond the one-year regulatory period but, unless exceptional circumstances were shown, it would be an abuse of discretion to consider a motion made beyond the time period.
>
> The analysis of Pulaski conclusively demonstrates that a defendant who seeks to withdraw a plea after the regulatory time period would indeed have to show by clear and convincing evidence that exceptional circumstances warranted the invocation of the court's inherent power. Pulaski holds that a defendant has the right to move for withdrawal of his plea within the one-year period but that it is within the discretion of the court, in its inherent power to do justice, to entertain the motion at a later date.
>
> Pulaski did not set a jurisdictional time limit. Neither, we conclude, does the statute. In the interests of sound

court administration, the statute reduces the regulatory time to one hundred twenty days. The statute, however, does not deprive the court of jurisdiction. . . .

We conclude that *it was within the power and jurisdiction of the county court to consider the motion even though it was brought after the one-hundred-twenty-day period set forth in the statute.*

*Id.* at 246–47 (emphasis added). Thus, the circuit court's use of its inherent authority is not constrained by statutory limitations.[8]

¶ 127. This does not mean that the statutory framework for postconviction relief under Wis. Stat. ch. 974 is meaningless, however, or that a defendant may ignore the statutory time limits and instead seek relief only under a court's inherent authority. As we have stated, a court should grant a new trial in the interest of justice under its inherent authority only "in exceptional cases" because it is such an extraordinary remedy. *Armstrong,* 283 Wis. 2d 639, ¶ 114. Therefore, a defendant who ignored statutory means for postconviction relief would do so at his peril.

¶ 128. Recognizing the circuit court's inherent authority to perform its justice-seeking function will

---

[8] The *Escalona* bar is similarly not a restriction on a court's inherent authority to grant a new trial in the interest of justice. *See State v. Escalona-Naranjo,* 185 Wis. 2d 168, 517 N.W.2d 157 (1994). As discussed above, legislatively created limits are not applicable to a court's inherent authority, which is derived from the Wisconsin Constitution. *Eberhardy,* 102 Wis. 2d at 548; *Lee,* 88 Wis. 2d at 247. We emphasized throughout *Escalona* that our decision was based on an interpretation of the language, purpose, and legislative history of the postconviction relief statute. 185 Wis. 2d at 175–78. It would appear, then, that the limitations on postconviction relief described in *Escalona* do not apply to a case invoking a court's inherent authority.

ensure that the justice system is not so inflexible that it cannot correct errors. As explained above, this will not upset the principle of finality as the majority asserts. Therefore, I would hold that the circuit court had the inherent authority to grant a new trial here because the real controversy in this case has not been fully tried, as I now explain in detail.

## B. Review of the Circuit Court's Decision.

¶ 129. I would hold that the circuit court has inherent authority to grant a new trial where the case has not been fully tried or there has been a miscarriage of justice. I would then carefully review the circuit court's decision to grant a new trial.[9] The circuit court

---

[9] As is evident from the majority's discussion of the standard of review, the majority does not address whether the circuit court's decision to grant Henley a new trial was an appropriate exercise of its discretion. Majority op., ¶¶ 28–29. Since I would hold the circuit court has the authority to grant a new trial here, I would review that decision under the erroneous exercise of discretion standard. *Totsky*, 233 Wis. 2d 371, ¶ 46; *Pulaski*, 23 Wis. 2d at 142 ("A motion to withdraw a plea of guilty and for a trial, as we deem the defendant's motions to be . . . is a motion directed to the discretion of the court in the interest of justice which the court has the inherent power to hear."); *Lee*, 88 Wis. 2d at 246 (quoting *Pulaski* for this proposition); *Schill*, 93 Wis. 2d at 378 (holding a motion to withdraw a guilty plea and grant trial "is addressed to the sound discretion of the trial court and [the supreme court] will not upset the court's ruling unless there is a sufficient showing of abuse of discretion"); *Behning*, 57 Wis. 2d at 186 ("An order for a new trial in the interest of justice is within the discretion of a trial judge and will be reversed only upon a clear showing there has been an abuse of discretion."); *Van Gheem v. Chi. & Northwestern R.R. Co.*, 33 Wis. 2d 231, 236, 147 N.W.2d 237, 239 (1967) (stating that order granting a new trial in interest of justice will

mistakenly based its authority to hear Henley's motion for a new trial on Wis. Stat. § 805.15, but there was a valid basis for that determination, so a review of its determination is therefore proper. The circuit court's decision should not be disturbed unless there is "a clear showing" of an erroneous exercise of discretion. *Totsky,* 233 Wis. 2d 371, ¶ 46; *Behning,* 57 Wis. 2d at 186 ("An order for a new trial in the interest of justice is within the discretion of a trial judge and will be reversed only upon a clear showing there has been an abuse of discretion."); *McFarlin v. Hewitt,* 5 Wis. 2d 488, 493, 93 N.W.2d 445 (1958) (stating that the court in reviewing a trial court's order for a new trial "seeks to determine whether the trial court abused its discretion in ordering a new trial. It seeks reasons to sustain the finding of the trial judge."); *McCoy v. Terhorst,* 188 Wis. 512, 517, 205 N.W. 420 (1925) ("[W]e do not reverse [a trial court's grant of a new trial in furtherance of justice] merely because, upon the record before us, we come to a different conclusion. It must clearly appear that there was an abuse of discretion before we reverse."); *John v. Pierce,* 176 Wis. 220, 224–25, 186 N.W. 600 (1922) ("A discretion is vested in the trial court to grant a new trial when he feels that the verdict is against the weight of the evidence, and this court will not disturb his action in that respect where the evidence is such that conflicting conclusions may be reached by different persons."). I am satisfied that the circuit court did not erroneously exercise its discretion in granting Henley a new trial.

be reversed only where there has been a clear abuse of discretion); *Bartell v. Luedtke,* 52 Wis. 2d 372, 377, 190 N.W.2d 145, 148 (1971) (citing *Van Gheem*); *Werren v. Allied American Mut. Fire Ins. Co.,* 3 Wis. 2d 313, 315, 316, 88 N.W.2d 348 (1958) ("An order for a new trial in the interests of justice is highly discretionary and, in the absence of a clear showing of an abuse of discretion, it will be affirmed.").

¶ 130. The circuit court determined that a new trial was warranted because the real controversy, S.E.S.'s consent, had not been fully tried. A case or controversy has not been fully tried "when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue in the case . . . ." *Hicks,* 202 Wis. 2d at 160. The court need not find "the probability of a different result on retrial" to find that the real controversy was not fully tried. *Id.* In its ruling that the real controversy was not fully tried here, the circuit court seemed persuaded by the Seventh Circuit's reasoning in *Adams*, 453 F.3d at 436, as am I.

¶ 131. In *Adams,* the Seventh Circuit analyzed Adams' trial and the testimony given by Demain at Hill's trial, and concluded that Adams' counsel made an unreasonable decision in failing to call Demain, as Demain's testimony could have "shed considerable, perhaps conclusive, light on the events of that night." *Id.* at 436–37. The Seventh Circuit noted several points that would have made Demain's testimony particularly valuable to Adams', and thus also Henley's, defense. First, Demain was "a witness to several key moments in the chronology" of what occurred that night, "where the evidence [was] sharply conflicting." *Id.* Second, unlike all the other parties involved in the events of that night, Demain had no prior relationship with anyone involved, "thus rendering him [an] impartial and independent" witness. *Id.* Third, Demain could have testified that the women invited the men up to their room, corroborating Sheets' testimony and "completely undercut[ting] S.E.S.'s version of uninvited strangers bursting into her room." *Id.* at 437. Fourth, Demain could have testified to seeing S.E.S. and the three men together later in the night, "support[ing] a plausible theory of a consensual encounter." *Id.*

¶ 132. The Seventh Circuit's description of Demain's testimony and the transcript of Demain's testimony at Hill's trial sharply contradict the majority's characterization of this evidence. The majority dismisses the importance of Demain's testimony as "largely duplicative of what Sheets related in her testimony," and thus concludes that "[i]t cannot be said that such evidence was not placed before the jury." Majority op., ¶ 82. To the contrary, the fact that Demain's testimony would have corroborated Sheets' testimony and contradicted the statements by S.E.S. supports the argument that this evidence would have been extremely valuable to the jury's credibility determination, which was the crux of this case. One such critical point is Demain's testimony that Sheets and S.E.S. invited the men up to their room. This testimony would have significantly undermined S.E.S.'s credibility since he would have been a second witness who contradicted S.E.S. and confirmed Sheets' statements.

¶ 133. The majority also asserts that Demain's testimony on seeing the group smoking outside together "is not critical." *Id.* The majority further downplays the importance of this testimony by stating that "we do not know whether this was before or after the sexual assault." *Id.*, ¶ 83. This mischaracterizes Demain's testimony. While Demain was unsure of the exact time he saw the group outside, his testimony demonstrates that it was at least twenty minutes after S.E.S., Adams, and Henley left Demain's room together. Thus, according to S.E.S.'s own testimony, this would have been sometime during or after the assault had begun. Also, while Demain did not specifically name Adams, Henley, and Hill, it is clear from the context of his testimony that he was referring to them when he said "[a]ll three of them were out there." Demain

607

further identified S.E.S. by referring to her as the "tall one," which is how he had previously described her when distinguishing her from Sheets. Such testimony certainly seems to undermine S.E.S.'s credibility because she did not mention smoking outside with the men later that night, and it also "support[s] a plausible theory of a consensual encounter between the men and S.E.S." *Adams*, 453 F.3d at 437.

¶ 134. Furthermore, as the majority points out, there is a police report that further undermines S.E.S.'s credibility, which was not presented at Henley's trial but contributed to the State's dismissal of Hill's case during his third trial. Majority op., ¶ 18 n.9. This report indicates that Hill previously told a police investigator that (1) Hill and Demain remained downstairs together for approximately twenty minutes after S.E.S., Henley, and Adams went up to S.E.S.'s room, and (2) S.E.S., Henley, Adams, and Hill rolled marijuana joints together in S.E.S.'s room that they later smoked together downstairs. This documentation of Hill's statements to the police further corroborates Demain's testimony, and thus Henley's version of the events, and calls S.E.S.'s credibility into question.

¶ 135. Thus, the circuit court, armed with the analysis and ruling by the Seventh Circuit, did not err in determining that the real controversy was not fully tried, where the jury was denied the opportunity to hear Demain's critical testimony that went to the heart of the case: S.E.S's credibility and the issue of consent.

C. Court of Appeals' Statutory and Inherent Authority.

¶ 136. The majority's holding that the circuit court lacked any inherent authority to grant a new trial in this case would seem to require the majority to

address whether the court of appeals has such inherent authority. However, the majority does not answer that certified question.[10] Of course, this court is not required to answer all of the certified questions when we accept a certification, but generally there should be a good reason for not doing so. *See, e.g., State v. Konkol,* 221 Wis. 184, 266 N.W. 174 (1936) (refusing to answer a certified question where we determined that jurisdiction was lacking).

¶ 137. In this case, where the majority has found that the circuit court did not have the inherent or statutory authority to grant a new trial, even though that court held that the real controversy has not been fully tried, it is appropriate to address whether the court of appeals has such authority. While under the majority's holding this court can still hear a motion for a new trial, "the question of whether justice has been done in an individual case is primarily and initially the concern of the court of appeals." *State v. McConnohie,* 113 Wis. 2d 362, 368, 334 N.W.2d 903 (1983). For the reasons stated below, I would hold that the court of appeals has both statutory and inherent authority to grant a new trial when the real controversy has not been fully tried or when justice has miscarried.

¶ 138. The legislature has given the court of appeals broad statutory reversal authority:

---

[10] In passing the majority notes that the court of appeals has the discretionary authority under Wis. Stat. § 752.35 to grant a new trial in the interest of justice. Majority op., ¶ 63. However, the majority does not further address this issue, nor does it address the question of whether the court of appeals also has the inherent authority to grant a new trial where the real controversy has not been fully tried or there has been a miscarriage of justice.

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

Wis. Stat. § 752.35.

¶ 139. In *State v. Allen,* the court of appeals adopted a narrow interpretation of its own statutory authority, concluding that it authorized the court of appeals to grant such relief only on a direct appeal, and not on a collateral attack. 159 Wis. 2d 53, 55–56, 464 N.W.2d 426 (Ct. App. 1990); Wis. Stat. § 752.35. The court in *Allen* reached that conclusion by focusing on the language authorizing it to "reverse the judgment or order appealed from" and determined that the language limited its authority to a direct appeal from a judgment and did not authorize the court of appeals to go around a motion for postconviction relief to reverse the underlying judgment. 159 Wis. 2d at 55–56.

¶ 140. We criticized that holding in *Armstrong* and have found no such limitation on our own statutory discretionary reversal authority under a nearly identical statute. 283 Wis. 2d 639, ¶ 113 n.25; Wis. Stat. § 751.06. We determined that the language of the statute need not be read so narrowly and that the court of appeals has the authority to "vacate the trial court's order denying the motion for new trial with directions for the circuit court to grant the motion." *Armstrong,*

283 Wis. 2d 639, ¶ 113 n.25. Because I conclude that *Allen* improperly interpreted § 752.35, I would clearly overrule *Allen* and hold that the court of appeals has statutory authority to grant a new trial, both on a direct appeal and on a collateral attack, where the real controversy has not been fully tried or there has been a miscarriage of justice.

¶ 141. Furthermore, the court of appeals has the same broad inherent authority to grant a new trial where the case has not been fully tried or there has been a miscarriage of justice, as this court and the circuit court. *See State v. Johannes*, 229 Wis. 2d 215, 229, 598 N.W.2d 299 (Ct. App. 1999); Wis. Const. art. VII §§ 2, 5; *Cannon*, 196 Wis. at 536 ("The inherent power of the court is . . . the power to administer justice whether any previous form or remedy has been granted or . . . and the power to provide process where none exists.") (quoting *In re Bruen*, 172 P. 1152 (Wash. 1918)). Thus, consistent with the reasoning above regarding the circuit court's inherent authority, I would hold that the court of appeals also has the inherent authority to grant Henley a new trial in this case.

D. Our Statutory and Inherent Authority.

¶ 142. While the majority recognizes that we have the inherent and statutory authority to grant a new trial, majority op., ¶¶ 79–81, given the majority's desire to limit the lower court's authority in this respect, it is important to emphasize that we retain the authority to do so. As we unequivocally stated in *Hicks* and *Armstrong,* this court has "inherent power and express statutory authority to reverse a judgment of conviction and remit a case for a new trial in the interest of justice, even where the circuit court has exercised its power to order or to deny a new trial." *Hicks,* 202 Wis. 2d at 159;

611

*Armstrong,* 283 Wis. 2d 639, ¶ 113; Wis. Stat. § 751.06. This case is an appropriate one to emphasize our inherent and express statutory authority.

¶ 143. Furthermore, for the same reasons that I would hold that the circuit court did not erroneously exercise its discretion in granting Henley a new trial, I would hold that since the real controversy in this case was not fully tried, and in order to avoid a miscarriage of justice, we must affirm the order of the circuit court for a new trial.

### III. CONCLUSION

¶ 144. In its pursuit of finality at all costs, the majority has ignored the analysis and reasoning of the Seventh Circuit, has failed to apply the correct standard of review to the appropriate exercise of discretion by the circuit court, and has unnecessarily restricted the circuit court's inherent authority and limited its ability to ensure that defendants get a fair trial in every case.

¶ 145. For the reasons set forth herein, I respectfully dissent.

¶ 146. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.