COURT OF APPEALS
DECISION
DATED AND FILED

June 18, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP1210**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV175

**IN COURT OF APPEALS
DISTRICT III**

MINNESOTA BUILT HARRIS, LLC,

   PLAINTIFF-APPELLANT,

 V.

HASTINGS MUTUAL INSURANCE COMPANY,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment and an order of the circuit court for St. Croix County: EDWARD F. VLACK III, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1    HRUZ, J.   Minnesota Built Harris, LLC ("Minnesota Built") appeals a grant of summary judgment to Hastings Mutual Insurance Company ("Hastings") and a denial of partial summary judgment to Minnesota Built. Minnesota Built also appeals an order awarding Hastings $5,000 in sanctions. As to the summary

judgment rulings, Minnesota Built argues that the circuit court erred by determining that Minnesota Built's action was barred by the two-year limitations period on legal actions against Hastings set forth in the applicable insurance policy. As to the court's sanctions award, Minnesota Built argues the court erred by awarding sanctions when Hastings failed to follow the "safe harbor" notice provision in WIS. STAT. § 802.05(3)(a)1. (2021-22).[1]

¶2     We conclude that the two-year limitations period in Hastings' policy barred Minnesota Built's current action against Hastings. We also conclude that a circuit court may use its inherent authority to sanction a party's counsel when counsel's egregious misconduct disrupts the court's ability to conduct its business efficiently and effectively. Here, the circuit court appropriately sanctioned Minnesota Built's counsel because counsel's false and repeated claim throughout the proceedings that he also represented Hugo Bass Group, LLC ("Hugo Bass"), along with counsel's failure to correct that misrepresentation, disrupted the efficient and effective functioning of the court and showed an obvious lack of candor to the court. Accordingly, we reject Minnesota Built's arguments and affirm.

## BACKGROUND

¶3     Hugo Bass owned a property in Somerset, Wisconsin ("the Property"). On June 11, 2017, a hailstorm damaged the Property. At the time of the storm, Hugo Bass insured the Property through an insurance policy issued by Hastings ("the Policy"). The Policy contained the legal action provision at issue

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

here under Section I, paragraph E, titled "Property Loss Conditions." That provision states:

> No one may bring a legal action against us under this insurance unless:
>
> a. There has been full compliance with all of the terms of this insurance; and
>
> b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

On August 9, 2017, Hugo Bass notified Hastings of the hail damage to the Property. On September 1, 2017, Hugo Bass and Hastings resolved the claim, and Hastings issued a payment to Hugo Bass in the amount of $205,661.32 for the actual cash value of the cost of repairs.

¶4 More than two years after the hailstorm, on September 13, 2019, Minnesota Built agreed to purchase the Property from Hugo Bass. Minnesota Built then identified additional damage to the Property, which it attributed to the June 2017 hailstorm. On October 15, 2019, Hugo Bass notified Hastings of the additional damage. Hugo Bass and Minnesota Built signed an amendment to their purchase agreement in November 2019, which included language regarding Hugo Bass's cooperation with Minnesota Built as to Hugo Bass's June 2017 hail damage claim.

¶5 On November 4, 2019, Hastings sent a letter to Hugo Bass acknowledging that it had received the notice of claim. The letter stated that Hastings would investigate the claim, that the claim raised potential coverage questions, and that Hastings reserved its right to limit or deny coverage. After further investigation, Hastings determined that the additional damage to the Property was not caused by the June 2017 hailstorm, and it denied Hugo Bass's claim because it did not involve a covered loss under the Policy.

3

¶6      On February 12, 2020, Minnesota Built sent an email to Hastings stating that it had a "dispute with the amount of loss on the below mentioned claim and denial letter" and requested an appraisal as provided by the Policy. The Policy's appraisal provision states, in part: "If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss." Hastings responded with a letter denying Minnesota Built's appraisal demand because: (1) the demand did not come from Hugo Bass, the named insured under the Policy; and (2) the disagreement between the parties was not as to the amount of loss, but rather as to coverage for a loss, which dispute was not subject to the appraisal process. The letter also explained that multiple exclusions in the Policy precluded coverage.

¶7      On June 9, 2020, Minnesota Built and Hugo Bass filed suit against Hastings, alleging breach of contract, bad faith, and failure to timely pay a claim pursuant to WIS. STAT. § 628.46. Attorneys Ryan Graff and Sean Bukowski signed the summons and complaint as attorneys for both Minnesota Built and Hugo Bass.[2] After several discovery disputes, Attorney Graff, on behalf of both Minnesota Built and Hugo Bass, filed a motion to compel an appraisal and stay discovery in the interim. Hastings responded by moving for summary judgment on Minnesota Built and Hugo Bass's claims. The circuit court denied Minnesota Built and Hugo Bass's motion to compel an appraisal and stay discovery.[3]

---

[2] Attorney Bukowski withdrew as counsel in the case on January 8, 2021. Although other attorneys from Attorney Graff's office participated in this litigation, we follow the parties' lead and refer to Graff as Minnesota Built's counsel.

[3] Graff filed the motion to compel an appraisal and stay discovery, and all the pleadings referred to in this opinion, on behalf of both Minnesota Built and Hugo Bass, until Hugo Bass was formally dismissed from the lawsuit. For ease of reading, and for reasons that will be made clear in this opinion regarding Minnesota Built being the only real plaintiff in interest, we refer to only Minnesota Built as the party making motions on behalf of the plaintiffs.

¶8      Thereafter, Hastings deposed David Shepherd ("Shepherd"), one of Hugo Bass's owners and the person responsible for overseeing the hail damage claim.[4]   During Shepherd's deposition, Hastings discovered that Graff never represented Hugo Bass as a client and that Hugo Bass was never interested in participating in the lawsuit.  Hastings' counsel then sent a letter to Graff asking whether he intended to dispute Shepherd's testimony in this regard.  Instead of responding directly, Minnesota Built filed a motion seeking to dismiss Hugo Bass, arguing that Hugo Bass had assigned its rights under the Policy to Minnesota Built and that the owners of the Property had "no (or at best, extremely limited) knowledge of the operations of the hail-damaged [Property] and have no contemporaneous knowledge of the hailstorm or the damage it caused to the [Property]."[5]   Minnesota Built also moved for partial summary judgment on its breach of contract claim.  Hastings did not oppose Hugo Bass's dismissal, but it moved for sanctions under WIS. STAT. § 802.05 based on Graff's prior misrepresentation to the circuit court and to Hastings' counsel that he also represented Hugo Bass in this lawsuit.

¶9      The circuit court granted Hastings' summary judgment motion, dismissed Hugo Bass as a party, and denied Minnesota Built's motion for partial summary judgment.  The court found that the Policy specifically provided that a legal action had to be brought within two years of the date of loss and that the date of loss was June 11, 2017, the date of the hailstorm.  Because the Policy was specific

---

[4] Hugo Bass was owned by David Shepherd, Laurie Shepherd, and Gwendolyn Svenvold. Paul Svenvold was formerly an owner during the relevant period, but his ownership interest went to his wife, Gwendolyn, when he passed away.

[5] Minnesota Built based its assignment argument on the November 2019 amendment to the purchase agreement, whereby Hugo Bass agreed to cooperate with Minnesota Built regarding the hail damage claim, and on an assignment of rights executed in December 2020, six months after Minnesota Built commenced this action.

as to when an action had to be commenced and Minnesota Built's action here was brought more than two years after the date of loss, the court concluded that the action was barred. The court also found that Graff's egregious conduct in misrepresenting an attorney-client relationship with Hugo Bass warranted sanctions, and it awarded Hastings $5,000 in sanctions pursuant to its inherent authority and WIS. STAT. § 804.12(2).

¶10    Minnesota Built now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

### I. Summary Judgment

¶11    We review a circuit court's grant of summary judgment de novo, applying the same methodology as the circuit court. *1325 N. Van Buren, LLC v. T-3 Grp., Ltd.*, 2006 WI 94, ¶22, 293 Wis. 2d 410, 716 N.W.2d 822. Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Interpretation of an insurance policy is a question of law that we also review de novo. *Everson v. Lorenz*, 2005 WI 51, ¶10, 280 Wis. 2d 1, 695 N.W.2d 298.

¶12    By statute, "[a]n action on a fire insurance policy must be commenced within 12 months after the inception of the loss." WIS. STAT. § 631.83(1)(a). The term "fire insurance" includes "indemnity insurance for losses to property caused by many other perils than fire," such as hail. *Villa Clement, Inc. v. National Union Fire Ins. Co.*, 120 Wis. 2d 140, 145, 353 N.W.2d 369 (Ct. App. 1984); *see also*

§ 631.83(1)(a) ("This rule also applies … to separate windstorm or hail insurance policies."). Here, the Policy extended the statutory twelve-month period to bring an action on the Policy to two years. Specifically, a legal action had to be brought against Hastings under the Policy "within 2 years after the date on which the direct physical loss or damage occurred," which was the June 11, 2017 hailstorm. Minnesota Built, however, brought its action on June 9, 2020, a year too late.

¶13    With respect to the limitations period, Minnesota Built's sole focus on appeal is on its right to enforce the appraisal provision. Within this narrow focus, Minnesota Built argues that the circuit court erred by concluding that "the statute of limitations had run on Minnesota Built's ability to request [an] appraisal pursuant to the [P]olicy." It asserts that the Policy's two-year limitations period does not apply to the appraisal provision and that there is no time limit for demanding an appraisal.

¶14    Minnesota Built's argument is fundamentally misplaced. In particular, it misunderstands the difference between demanding an appraisal and enforcing that demand through legal action. The circuit court did not, and needed not, address whether the Policy's limitations period separately barred Minnesota Built's ability to demand an appraisal. Rather, the court properly concluded that the Policy's limitations period barred Minnesota Built's ability to bring *any* breach of contract action on the Policy, including one to enforce the appraisal provision, more than two years after the date of loss. Minnesota Built's right to enforce any contract claims against Hastings related to the June 11, 2017 hailstorm, including any claim to enforce the appraisal provision, is therefore barred by the Policy's two-year limitations period. *See Betthauser v. Medical Protective Co.*, 172 Wis. 2d 141, 149, 493 N.W.2d 40 (1992) (under Wisconsin law, "statutes of limitation [are viewed as] substantive statutes because they create and destroy rights" as well as remedies).

¶15     Minnesota Built does not address the fact that the Policy's limitations period bars its action to enforce the appraisal provision.  Rather, it insists that an appraisal demand is not "a legal action" against Hastings and that the demand is thus not barred by the Policy's limitations period.  While these statements are true, they do nothing to benefit Minnesota Built in its attempt to oppose summary judgment in this case.  Hastings determined that the October 2019 claim related to the June 11, 2017 hailstorm was not covered by the Policy and denied Minnesota Built's appraisal demand.  Eventually, Minnesota Built filed this action to enforce that demand, but it did so too late.  Quite simply, that action is barred by the Policy's limitations period.  Under these circumstances, Hastings' later denial of Minnesota Built's appraisal demand is a red herring for purposes of enforcing the limitations period.[6]

¶16     In its reply brief, Minnesota Built contends that even if its breach of contract claim is time-barred, its action against Hastings should not be dismissed because its bad faith claim remains.  Minnesota Built's initial appellate brief focused solely on the appraisal provision, and it raised the bad faith argument only in its reply brief.  Because Minnesota Built failed to raise its bad faith argument in its main appellate brief, we deem the argument abandoned, and we will not address it

---

[6] To put a finer point on this notion, it is undisputed that the date of loss was June 11, 2017, and the expiration of the period by which to bring a legal action under the Policy was two years later, June 11, 2019.  Notably, Minnesota Built did not demand an appraisal until February 12, 2020.  Thus, this case does not even represent a situation where an insured demanded an appraisal before the expiration of the Policy's two-year limitations period.  Again, these circumstances manifestly support the merit in granting summary judgment in this case.

on the merits. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492-93, 588 N.W.2d 285 (Ct. App. 1998).[7]

¶17 In short, the Policy's two-year limitations period plainly bars Minnesota Built's legal action against Hastings filed on June 9, 2020, including any attempt by Minnesota Built to enforce the appraisal provision. Accordingly, and upon our de novo review, we conclude that the circuit court properly granted summary judgment to Hastings on Minnesota Built's claims.[8]

## II. Sanctions

¶18 We generally review a circuit court's decision to impose sanctions for an erroneous exercise of discretion and affirm the court's decision "if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion." *Lee v. GEICO Indem. Co.*, 2009 WI App 168, ¶16, 321 Wis. 2d 698, 776 N.W.2d 622 (citation omitted). Beginning with Graff signing the summons and complaint claiming to be the attorney for both Minnesota Built and Hugo Bass, the record shows that Graff repeatedly misrepresented that he represented Hugo Bass.

---

[7] Nevertheless, we note that Minnesota Built's argument seems to lack support in the record, given that it presented little to no evidence showing an issue of material fact supporting its bad faith claim such that Hastings would not be entitled to summary judgment on all of Minnesota Built's claims under the Policy's limitations period. *See Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶65, 334 Wis. 2d 23, 798 N.W.2d 467 ("[S]ome breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured.").

[8] Hastings alternatively argues that summary judgment against Minnesota Built was warranted on two other grounds: (1) there is no evidence Hugo Bass assigned its rights under the Policy to Minnesota Built; and (2) the insured—either Hugo Bass or Minnesota Built—breached its duties under the Policy. Because we conclude that the circuit court properly granted summary judgment on the basis that Minnesota Built's action is barred under the Policy's two-year limitations period, we need not address Hastings' alternative arguments. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (this court need not address all issues raised by a party if one is dispositive).

These misrepresentations led to several delays in the proceedings, mostly dealing with Hastings' attempts to acquire discovery from Hugo Bass and to depose Hugo Bass's owners.[9]

¶19    Believing that Graff represented both Minnesota Built and Hugo Bass, Hastings served on Graff written discovery requests—including requests for admission, interrogatories, and requests for production—directed to both parties. Hugo Bass's responses to the discovery requests were deficient, and, in particular, the responses to the interrogatories were signed only by a representative of Minnesota Built, not Hugo Bass.[10]  These deficiencies prompted Hastings to file a motion to compel Hugo Bass to produce complete responses to Hastings' written discovery requests.  Following its motion to compel, Hastings issued notices for the December 9, 2020 depositions of Hugo Bass's owners.  On December 8, 2020, Minnesota Built filed a motion for a protective order, requesting that the depositions of Hugo Bass's owners take place after the circuit court ruled on Hastings' motion to compel.  Hastings then filed a second motion to compel, requesting that the court order Hugo Bass to produce its witnesses for depositions.

¶20    In January 2021, the circuit court held a hearing on the motions, granted Hastings' first motion to compel, and denied Hastings' second motion to compel.  The court ordered Hugo Bass to provide complete responses to Hastings' discovery requests by February 16, 2021.  The court also determined that Hastings could depose Hugo Bass's owners after Hastings received the supplemental

---

[9] For purposes of this opinion, we use the plural "misrepresentations" because we view Graff as committing a misrepresentation each time he filed a pleading or appeared in the circuit court on behalf of both Minnesota Built and Hugo Bass.  We recognize, however, that Graff made only one *type* of misrepresentation—that he represented Hugo Bass in this lawsuit when he did not.

[10] *See* WIS. STAT. § 804.08(1)(b) (requiring that the answers to interrogatories "be signed by the person making them").

responses and, therefore, the court did not need to address the motion for a protective order.

¶21     On February 8, 2021, Minnesota Built filed its motion to compel an appraisal and stay discovery. The following day, Hastings issued notices for the depositions of Hugo Bass's owners, scheduled for March 2, 2021. Graff then provided supplemental discovery responses to Hastings, but the responses to the interrogatories were still not signed by a representative of Hugo Bass. On March 1, 2021, Minnesota Built moved to quash the deposition notices of Hugo Bass's owners until the circuit court decided the motion to compel an appraisal and stay discovery. In April 2021, the court denied both of Minnesota Built's motions. Following the court's denial, Hastings again issued deposition notices for Hugo Bass's owners, this time for May 13, 2021. The parties eventually agreed on a deposition date of May 26, 2021. On that day, Hastings deposed David and Laurie Shepherd.

¶22     In response to a question of whether he or anyone on behalf of Hugo Bass hired an attorney to represent Hugo Bass in this case, Shepherd responded: "Hugo Bass Group did not retain an attorney. We are—I guess we are part of this lawsuit that's going on with Hugo. We did not get our own counsel." As for the three deposition notices, Shepherd testified that he had not seen those notices until the day before the May 26, 2021 depositions and that he was unaware Hastings was attempting to arrange those depositions through Graff's office. As for responding to Hastings' written discovery requests, Shepherd testified that Graff's office contacted him but that he informed the office that he was not interested in participating in the lawsuit.

¶23     Shepherd further testified that Graff's office eventually informed him of its filings in the circuit court stating that Graff represented Hugo Bass in this lawsuit, but Shepherd could not recall when he received this information. After conversing with Graff during a break in the deposition, Shepherd stated that he did not want to change his answers. As we have already noted, Hastings' counsel then sent a letter to Graff inquiring whether he intended to dispute Shepherd's testimony, to which Graff responded with a motion to dismiss Hugo Bass. *See supra* ¶8. Hastings then moved for sanctions against Minnesota Built and its attorneys pursuant to WIS. STAT. § 802.05.

¶24     The circuit court concluded that it could not award sanctions pursuant to WIS. STAT. § 802.05 because Hastings "clearly failed to follow the safe harbor provisions" in § 802.05(3) and its failure to do so was "not helpful to the cause of justice and did not impress upon this [c]ourt at all."[11]  Nevertheless, the court determined that it had the inherent authority to impose sanctions when warranted. Despite its displeasure with Hastings' counsel regarding the lack of a safe harbor notice, the court found that Graff's conduct was much more egregious than the conduct of Hastings' counsel. The court explained that Graff "at no point represented Hugo Bass and never corrected that misunderstanding" until after Shepherd's deposition and that Graff "fought tooth and nail to quash the depositions of Hugo Bass personnel because [he] obviously knew what Mr. Shepherd would say."

---

[11] WISCONSIN STAT. § 802.05(3)(a)1. requires a party seeking sanctions under § 802.05(2) to first serve the motion on the potentially sanctionable party but not file it or present it to the circuit court "unless, within 21 days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."

¶25 The circuit court found that Graff's egregious actions prejudiced the court's ability "to efficiently and effectively administer judicial business" and that its "time was misused, at a minimum, addressing the motion to quash the depositions of Hugo Bass'[s] personnel." Such actions, the court continued, warranted sanctions to "deter such conduct in the future" and to remind counsel "of the expectations of attorneys in Wisconsin as officers of the [c]ourt, which includes candor to the tribunal." The court therefore awarded sanctions to Hastings pursuant to its inherent authority and WIS. STAT. § 804.12(2).

¶26 On appeal, Minnesota Built does not dispute the circuit court's bases for awarding sanctions to Hastings and, in fact, acknowledges that the court has the inherent authority to impose sanctions. Instead, Minnesota Built argues only that the court erred by awarding sanctions in Hastings' favor because Hastings failed to comply with the safe harbor notice provision in WIS. STAT. § 802.05(3)(a)1. Minnesota Built adds that, even if Graff's conduct was improper, allowing Hastings to circumvent the rules "sets a poor precedent." We disagree with Minnesota Built's argument in both respects, although we strongly admonish parties and counsel to fully comply with the requirements of § 802.05(3)(a)1.

¶27 Courts have inherent powers that are necessary "to accomplish their constitutionally and legislatively mandated functions." *State v. Henley*, 2010 WI 97, ¶73, 328 Wis. 2d 544, 787 N.W.2d 350. Courts generally exercise these inherent powers in three areas: "(1) to guard against actions that would impair the powers or efficacy of the courts or judicial system; (2) to regulate the bench and bar; and (3) to ensure the efficient and effective functioning of the court, and to fairly administer justice." *Id.* These powers are exercised to "maintain [the courts'] dignity, transact their business, [and] accomplish the purposes of their existence." *Id.* (alterations in original; citation omitted). A court should only invoke its inherent

power when "such power is necessary to the functioning of the court." ***Id.***, ¶74. A court may thus use its inherent power to impose sanctions on a party or its attorney for misconduct during litigation. *See **State ex rel. Godfrey & Kahn, S.C. v. Circuit Ct. for Milwaukee Cnty.***, 2012 WI App 120, ¶43, 344 Wis. 2d 610, 823 N.W.2d 816.

¶28 We conclude that the circuit court did not erroneously exercise its discretion by awarding sanctions pursuant to its inherent authority, regardless of whether Hastings followed the notice provision in WIS. STAT. § 802.05(3)(a)1. Although § 802.05(3)(a)1. serves as a notice to attorneys to correct their conduct before a motion for sanctions is filed with the court, there was nothing for Graff to correct here given that his misrepresentations throughout the litigation had already damaged the court by the time the misrepresentations were revealed and the motion for sanctions was filed. Graff's egregious conduct clearly disrupted the litigation process, thereby impeding the court's ability to function efficiently and effectively. Moreover, Graff's misrepresentations to the court and his failure to correct those misrepresentations earlier violated his duty of candor to the court. *See* SCR 20:3.3(a)(1) ("A lawyer shall not knowingly … make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.").

¶29 Graff's continuous misrepresentations to the circuit court that he represented Hugo Bass—and his concomitant failure to correct those misrepresentations earlier—impaired the court's ability to function efficiently and effectively. Graff's conduct misused the court's time by requiring it to hear and address the deficient discovery responses from Hugo Bass, Minnesota Built's request for a protective order to delay the depositions of Hugo Bass's owners until after the court addressed the motion to compel, Minnesota Built's attempt to compel

an appraisal and stay discovery, and Minnesota Built's attempt to quash the depositions of Hugo Bass's owners until the court decided the motion to compel an appraisal. These actions pushed back the depositions of Hugo Bass's owners and delayed discovery for about six months.

¶30    Graff's actions also prevented Hastings and the circuit court from discovering that Hugo Bass had not retained an attorney to represent it in the lawsuit and that Hugo Bass had no interest in participating in the lawsuit. The latter fact was obviously material to the conduct of this lawsuit. And, as the court noted, Graff's multiple attempts to hinder discovery and delay the depositions of Hugo Bass's owners were done for the purpose of avoiding the harmful revelation that Hugo Bass was an unwilling participant. By doing so, Graff's actions clearly disrupted the litigation process and misused the court's time by having it address needless motions. Accordingly, the court appropriately imposed sanctions for such an interference, pursuant to the court's inherent authority to ensure the efficient and effective functioning of the court.

¶31    Graff's misrepresentations and his failure to correct those misrepresentations earlier also violated his duty of candor to the circuit court. Graff maintained that he represented Hugo Bass throughout the entire litigation, and he made no effort to inform the court that he did not represent Hugo Bass. Even after Shepherd's deposition, wherein Graff's misrepresentations were revealed, Minnesota Built's motion seeking dismissal of Hugo Bass did not acknowledge Shepherd's testimony that Hugo Bass had not retained an attorney for the lawsuit and that it was not interested in participating in the lawsuit. Graff made no effort to disclose that he did not actually represent Hugo Bass. Given such an egregious violation of counsel's duty of candor to the court, the court appropriately imposed

sanctions to deter such conduct in the future pursuant to the court's inherent authority to regulate the bench and bar.

¶32    WISCONSIN STAT. § 804.12(2) also supports the circuit court's imposition of sanctions for Graff's egregious conduct. *See Lee*, 321 Wis. 2d 698, ¶23 (a court's statutory authority to sanction is in addition to, and does not displace, a court's inherent sanctioning authority).  If a party fails to comply with a discovery order, the court shall require that party "or the attorney advising the party or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."  Sec. 804.12(2)(b).  Here, the court ordered Hugo Bass to provide complete responses to Hastings' written discovery requests. Graff provided the supplemental responses, but those responses lacked input from Hugo Bass, given that the responses to the interrogatories were never signed by a representative of Hugo Bass and, as was later revealed, Hugo Bass had no interest in participating in the lawsuit.  Graff's misuse of the court's time in seeking to delay the depositions of Hugo Bass's owners and his lack of candor with the court do not substantially justify a failure to comply with the court's discovery order, and Graff's actions do not constitute circumstances that make the sanctions award unjust.

¶33    For all of the foregoing reasons, the circuit court's imposition of sanctions was also appropriate under WIS. STAT. § 804.12(2)(b).[12]

> *By the Court.*—Judgment and order affirmed.

> Not recommended for publication in the official reports.

---

[12] The circuit court awarded Hastings $5,000 in sanctions rather than Hastings' requested amount of $33,258.